Howard E. Goldfluss, J.
This is a case of first impression in that the issue is the applicability of the Statute of Limitations to the bail jumping statute (Penal Law, § 215.56 et seq.). The District Attorney of Bangs County and counsel for the defendant agree in their respective memoranda that there is no definitive precedent cited in any New York State jurisdiction which meets this issue.
*636 The parties have presented to this court the following stipulated facts:
The defendant, Wilson Ingram, originally charged with a misdemeanor, was released from custody on parole by court order on condition that he appear in Part IB of the Criminal Court of Kings County on February 9, 1970. He failed to appear on said date and a bench warrant was issued for his arrest. He was not apprehended nor did he surrender himself to the jurisdiction of the court, and his next appearance resulted from his arrest on a new unrelated crime. The date of the arrest was April 24, 1973. On that date, a prosecution for the crime of bail jumping was commenced by the filing óf a misdemeanor complaint before the presiding Judge in Part AR1 in Kings County Criminal Court. This complaint was based upon the defendant’s failure to appear on February 9, 1970, or within 30 days thereafter, in violation of section 215.56 of the Penal Law (bail jumping), which reads as follows: “ A person is guilty of bail jumping in the second degree when by court order he has been released from custody or allowed to remain at liberty, either upon bail or upon his own recognizance, upon condition that he will subsequently appear personally in connection with a criminal action or proceeding, and when he does not appear personally on the required date or voluntarily within thirty days thereafter.”
The defendant now moves under CPL 170.30 (subd. 1, par. [d]) which provides: “ After arraignment upon an information, a simplified information, a prosecutor’s information or a misdemeanor complaint, the local criminal court may, upon motion of the defendant, dismiss such instrument or any count thereof upon the ground that: * * * (d) The prosecution is untimely, pursuant to section 30.10 [of the CPL] ”.
The relevant provision of CPL 30.10 (subd. 2, par. [c]): “A prosecution for a misdemeanor must be commenced withm two years after the commission thereof ’ ’.
The People take the position that this period of limitation does not apply to the crime of bail jumping. They submit that the intrinsic nature of bail jumping makes it a crime continuous in character and not terminated by the defendant’s original nonappearance. They submit that it is an unabated and continuous crime of criminal activity until the defendant is returned to the jurisdiction of the court. Following this reasoning, the People further contend that the period of limitation prescribed by statute as to the filing of a bail jumping complaint does not commence to run until the defendant is apprehended or from *637 such time as the defendant makes his appéarance known to the enforcement arm of the court.
The • defendant takes the position that the running of the Statute of Limitations commences on the 31st day after his initial failure to appear. He further submits that his crime is not a continuing one because the statute does not specifically so state and that it is no different from any other misdemeanor in that respect. He claims, therefore, that the prosecution is barred by the two-year limitation rule.
The agreed and stipulated facts, therefore, leave the following issue for this court to decide:
Is the defendant immune from prosecution on the bail-jumping charge which originated more than two years prior to its filing?
As stated, there is no case law, either in New York or other jurisdictions, which directly deals with this issue. In People v. Kirk (62 Misc 2d 1078) in a case involving deceitful representation, the court declared that the termination date of the commission of a continuous crime, and not the starting date, governs the application of the Statute of Limitations. The question then arises: Is this a continuing crime or, more specifically, is the defendant under a continuing duty to perform an affirmative act before the two-year limitation commences?
The defendant relies heavily on Toussie v. United States (397 U. S. 112). The defendant in that case was originally convicted of failing to register for the draft on his 18th birthday or within five days thereafter, as required by section 3 of the Universal Military Training Service Act (62 U. S. Stat. 604, as amd. by 65 U. S. Stat. 75, 76). The defendant not only failed to file within the prescribed period of time but he did not do so at any time thereafter.
The defendant Toussie was indicted on May 3, 1967 for his failure to so register, almost eight years after the prescribed date and the grace period date had passed. He then moved to dismiss on the ground that the prosecution was barred by the failure of the Government to act within the five-year Statute of Limitations, as provided for in section 3282 of title 18 of the United States Code. The Supreme Court of the United States sustained this position and ruled that the limitation statute commenced to run on the fifth day after Toussie’s 18th birthday, and the action was time barred.
The court in the Toussie case clearly expressed the judicial dilemma we are faced with herein, because it referred to the ambiguity of intent in the application of the statute. Clearly, the regulation in the Toussie case required a continuing duty, *638 as it read (Code of Fed. Reg., tit. 32, § 1611.7, subd. [c]): “ The duty of. every person subject to registration * * * shall continue at all times, and if for any reason any such person is not registered on the day or one of the days fixed for his registration, he shall immediately present himself for and submit to registration.” Yet the court states further in the opinion (397 U. S. 112, 122, supra): “ ‘When choice has to be made between two readings of what conduct Congress has made a crime, it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite. We should not derive criminal outlawry from some ambiguous implication.’ ”
Justice Black, in acknowledging the apparent conflict, stated (p. 122): “We do not mean that the argument in support of implying a continuing offense is insubstantial, but at best is highly equivocal. Basically, we are faced with the task of construing a somewhat ambiguous statute in one of two ways. One way would limit institution of prosecution to a period of five years following the initial violation, while the other could effectively extend the final date for prosecution until as late, as 13 years after the crime is first complete.”
The defendant, following this reasoning, submits that the circumstances are analogous and that the New York State statute on bail jumping, in juxtaposition to the Statute of Limitations, is equally vague and equivocal and therefore should be decided in the isame manner.
This would undoubtedly be true if the Supreme Court relied solely on the ambiguity concept. But this court, in analyzing the Toussie case, has come to the conclusion that the gravamen of the decision revolved around a more significant point raised by Justice Black when he stated (p. 122): “ There is nothing inherent in the act of registration itself which makes failure to do so a continuing crime.”
It therefore is incumbent on us to determine if section 215.56 implies an inherent affirmative duty by the defendant to surrender to the jurisdiction of the court, because if that duty exists, then bail jumping must then be a continuing crime (see United States v. Mendoza, 122 F. Supp. 367 and United States v. Belfast Fabrics Corp., 65 F. Supp. 567).
In the Toussie case, Justice Black, speaking for the court and after an exhaustive review of the legislative history of the draft laws and the intent of the drafters of said laws, stated (p. 115); “ The doctrine of continuing offenses should be applied only *639 in limited circumstances, since as the Court of Appeals correctly observed in this case, ‘ the tension between the purpose of a statute of limitations and the continuing offense doctrine is apparent; the latter, for all practical purposes, extends the statute beyond its stated term.’ ”
But the court did not intend that the extension of the Statute of Limitations is necessarily abhorrent, for it states further (p. 115): “ These considerations do not mean that a particular offense should never be construed as a continuing one ” and may be found where ‘ ‘ the nature of the crime involved is such that Congress must assuredly have intended that it be treated as á continuing one.”
The continuing offense doctrine has been upheld in State v. Johnson (212 N. C. 566, 570) wherein the court defined it as ‘ ‘ A breach of the criminal law not terminated .by a single act or fact, but which subsists for a definite period and is intended to cover or apply to successive similar obligations or occurrences.” (See United States v. Midstate Co., 306 U. S. 161; United States v. Kissel, 173 F. 823.)
In People v. Gold Key Club (3 A D 2d 740)., the court held that the defendant had a continuing affirmative duty and therefore was guilty of a continuing offense in maintaining or engaging in a business or profession without a license; and the court in People v. Weleck (10 N. J. 355) reached the same conclusion where the defendant failed to perform the duties of a public office; and in Matter of Logan (205 S. W. 2d 994 [Texas] ) failure to support a minor child; and in United States v. Franklin. (188 F, 2d 182) wherein the defendant failed, and continued to fail, to register under the Alien Registration Act.
As stated, it is academic that it is not the starting date but the termination date of the commission of a continuous crime which governs the application of the Statute of Limitations (People v. Hines, 284 N. Y. 93; People v. Kirk, 62 Misc 2d 1078, supra; State of New York v. New York Movers Tariff Bur., 48 Misc 2d 225).
To determine whether section 215.56 of the Penal Law is a continuing offense must be a question of statutory interpretation.
The wording of sections 215.56 and 215.57 of the Penal Law,, as well as the nature of the offense, indicates to this court that it was the intention of the Legislature, to create a continuing offense in the charge of bail jumping. The defendant maintains his delinquent behavior for as long as he remains a fugitive. The law itself defines bail jumping in terms of not appearing personally on the required date and the continued absence for a period of 30 days thereafter.
*640 The situation in the Toussie case is not analogous to the situation herein. The defendant Wilson Ingram evaded apprehension and continued to secrete himself. In Toussie, the defendant made no effort to evade the jurisdiction of the courthe Ivas available and the Government would have had no difficulty in placing him under custody if it was their intention. It can be readily understood that it would have been inequitable to enlarge the Statute of Limitations under ¡such circumstances. It can be equally understood why the defendant herein is not in the same position and why Ingram divested himself of the protection of the Statute of Limitations by his chosen course of unavailability.
Further, it is the opinion of this court that the 30-day grace period was added to cushion the impact of the statute, since an intentional failure to appear is not an element of the crime. The defendant does not jump bail at a particular point in time; he continues to do ¡so for as long as he absents himself.
A most logical reason for this conclusion exists in the reading of section 215.59 together with sections 215.56 and 215.57 of the Penal Law. Section 215.59 reads:
“ In any prosecution for bail jumping for failing to respond to an appearance ticket, it is an affirmative defense that:
“1. The defendant’s failure to appear on the required date or within thirty days thereafter was unavoidable and due to circumstances beyond his control; and
“ 2. During the period extending from the expiration of the thirty day period to the commencement of the action, the defendant either:
“ (a) appeared voluntarily or as soon as he was able to do so, or
“ (b) although he did not so appear, such failure of appearance was unavoidable and due to circumstances beyond his control.” (Emphasis added.)
The passage of this section indicates to this court that the legislative intent is spelled out clearly. If the defendant was under no continuing duty to appear beyond the 30th day, then it would seem totally unnecessary to provide for such appearance as an affirmative defense. On the contrary, the Legislature indicates quite clearly by the inclusion of paragraphs (a) and (b) of subdivision 2 of section 215.59 that it considers the acts by defendant in keeping his whereabouts unknown and unascertainable as continuing wrongful ponduct. The very offense itself consists of defendant’s maintaining his presence a secret in order to avoid-prosecution for the underlying crime.
An analogous situation is found in United States v. Bruno (328 F. Supp. 815). The court held that under a statute making *641 it a crime to be found in the United States after having been excluded and deported, the criminal conduct of the defendant continued until he was apprehended and the five-year Statute of Limitations did not run so long as the alien was physically present in the United States and did not surrender to the authorities (see United States v. Alvarado-Soto, 120 F„ Supp. 848).
The defendant contends that the People’s rights are not jeopardized by the barring of the bail-jumping charge, as the People still have the underlying charge pending by which the defendant can be prosecuted. This is a toothless remedy at best. After two years, the memory of witnesses dim; their desire to testify is lessened, and they are more likely to be missing. It has been this court’s observation that the People are stymied under such circumstances; and if the defendant were then permitted to profit from his own wrongdoing, it would be a perversion of natural thought and the judicial process. This we cannot permit.
The code of laws under which our society is governed and the courts that administer it are the difference between civilization and anarchy. These laws and these courts must be worthy of the highest respect from the citizenry, who have the absolute right to demand this. To permit a wrongdoer to profit from his malfeasance must necessarily destroy credence and respect for the law and reduce the courts to a mockery. It is the obligation and responsibility of all those in any way connected with the criminal justice system to see to it that this does not occur. The defendant herein continued his delinquent behavior for as long as he remained a fugitive, and to permit him to claim the two-year Statute of Limitations as a time bar to prosecution would in effect reward him for his excellence in successfully evading the process of the law. Such a finding, in the opinion of this court, would not only hold up the law and the courts to ridicule but could in time inferentially authorize a pattern of conduct which may leave society impotent in its natural desire to protect itself from those who would criminalize it. It would render meaningless the inherent power that society has to punish its transgressors. Ours is not a perfect system; it needs improvement in many ways. But the standard of common sense may not ever be altered if the law is to remain a meaningful and viable concept. It is common sense and basic morality, as well as statutory interpretation, which dictates the decision in this case.
The motion to dismiss the complaint on the ground that it is barred by the Statute of Limitations is hereby denied,