Milton Shalleck, J.
Oliver Wendell Holmes once wrote, in dissent: “ I do not suppose that civilization will come to an end ¡whichever way this case is decided. But as the reasoning which prevails in the mind of the majority does not convince me * * * I think it proper to express my views.”[1] So here. A most respected and able colleague has already impressively spoken on the subject here involved as “ a ease of first impression ”,[2] 3and there can be little cavil that there is some logic to sustain his conclusions. But there are other aspects of this problem which, when further probed, invite modification of his views. And until appellate courts have definitively ruled, I am constrained here to comment somewhat tangentially.[3] Regardless, however, of whether my ideas are or are not sustained, I feel confident that both the way and the means can be found by the prosecution and law enforcement agencies to avoid real hindrance to the execution of their respective obligations and duties, although somewhat more burdensome.
The defendant here was charged originally with petty larceny (Penal Law, § 155.25) and third degree assault (Penal Law, § 120.00). He was released from custody on his own recognizance iby court order, conditioned upon his reappearance in this court on September 24, 1970. He failed to appear on said date as required. A bench warrant was issued. Nor did he appear within 30 days thereafter. Apparently nothing of a practical nature was done about defendant’s default in appearing for almost three years. On July 28, 1973, defendant was arrested on a more serious unrelated felonious crime: robbery in the first degree (Penal Law, § 160.15). On that date the prosecution additionally filed a misdemeanor complaint against him for second degree bail jumping (Penal Law, § 215.56) for his f ailure to appear on September 24,1970 or voluntarily within 30 days thereafter, as that statute reads.
It is this misdemeanor complaint that is attacked by defendant’s motion to dismiss.[4] The thrust of it is unencumbered. The charge is simply that since there is a two-year Statute of Limitations upon misdemeanors (GPL 30.10, subd. 2, par. *144 [c]), the complaint on its face shows that the prosecution is outlawed by the passage of more time than that allowed. In other words, on the 31st day after September 24,1970 the crime was finalized. The statute began then to run, completing the permissible prosecuting time on October 25, 1972.
Ingram (74 Misc 2d 635, supra) isays “ no ” to such argument, upholding in essence, the contention of the People that there is no time limitation for prosecuting bail jumping, since the intrinsic crime is continuous, not terminable until the defendant is returned “ to the jurisdiction of the court It is only then, the claim is, that the prescribed time limitation begins to run, for defendant has the affirmative duty to return.
Of course, the defendant here should have obeyed the mandate to return on September 24,1970. His disobedience, if purposeful, can never receive the approbation of this or any other court. Yet such lack of legal approval does not obviate the applicability of a Statute of1 Limitations. He is still entitled to the presumption of innocence and is endowed by law with the full gamut of his rightful defenses, including the loss to the People of prosecuting him due to untimeliness. For apparently, the latter may be as much a substantive right in a criminal case as any other defense capable of assertion under the general issue. “ Statutes of limitation in criminal cases * * * create a bar to the prosecution” (People ex rel. Reibman v. Warden of County Jail, 242 App. Div. 282, 284). Their “ purpose * * * in criminal actions is to afford immunity from punishment ” (People v. Steiger, 154 Misc. 538, 541).
Statutes of Limitations represent public policy. They “ limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.” (Toussie v. United States, 397 U. S. 112, 114.) No court has the right to shorten such fixed period (People v. Katz, 46 Misc 2d 474). Because they are protective statutes, they ‘ ‘ are- to be liberally construed in favor of the defendant, not only because such liberality of construction belongs to all acts of amnesty and grace, but because the very existence of the statute is a recognition and notification by the Legislature of the fact that time, while it gradually wears out proofs of innocence, has assigned to it fixed and positive periods in which it destroys proofs of guilt. (Hogoboom v. State, 120 Neb. 525; People v. Lord, 12 Hun 282.) ” (People ex rel. Reibman v. Warden of County Jail, supra, p. 284.) The principle that criminal limitations statutes are “to be liberally interpreted in favor of repose ” (United States v. *145 Scharton, 285 U. S. 518, 522) and “ in favor of the defendant ” is widely held (People v. Lord, supra; People v. Bailey, 103 Misc. 366; People v. Hagan, 138 Misc. 771, affd. 235 App. Div. 784; People v. Steiger, supra, p. 541; People v. Guariglia, 187 Misc. 843, affd. 272 App. Div. 784). This is the context in which the problem is to be approached.
The People contend — not without logic and reason — that so long as defendant defies his “ affirmative duty * * * to surrender to the jurisdiction of the court whose order is violated” the crime is endless. There are three aspects of error here, I believe.
First, jurisdiction. I doubt whether defendant ever escaped this court’s long and tight jurisdictional grasp. He was always subject, from the day he first appeared on the underlying charge to the time of his arrest on an unrelated charge, to the enforcement of his subsequent necessary appearances. The question of the Statute of Limitations need never have arisen. When the complaint is filed, jurisdiction of the subject matter is complete. It permits a warrant to ibe issued to bring defendant before the court. When he appears — and it does not matter in what manner: by execution of the warrant, by voluntary appearance, by response to a summons, or even by an illegal arrest — the court has jurisdiction over the person of the defendant (People v. Rockwell, 38 Misc 2d 645, 649-650, and notes 7-10 inclusive). The jurisdiction here over the subject matter and person on the underlying charge was fixed. The court was never thereafter deprived; and defendant’s absence, even continuous, could not destroy that jurisdiction. Consequently at any time after the nonappearance of defendant, his default could, by proper enforcement action, effectively have prevented the annulling result of the Statute of Limitations to the instant charge.
Second, defendant’s duty. Both in the People’s brief and in People v. Ingram (74 Misc 2d 635) there are found such statements as: it “ is a continuing duty by the defendant to perform an affirmative act * * * to surrender to the jurisdiction of the court whose order he violated”; “ the defendant Wilson Ingram evaded apprehension and continued to secrete himself ”; that he chose a “ course of unavailability ”; “ the very offense itself consists of defendant’s maintaining his presence a secret in order to avoid prosecution for the underlying crime ”. There is no dispute that defendant here and in Ingram should have obeyed the court order. And while it may be so, no proved facts either in Ingram or here uphold a choice of a “ course *146 of unavailability ” on defendant’s part. What the Ingram court has done, in other words, is to conclude the unstated supporting facts. 'Both in that case and here it is implied that such element would not matter since “ an intentional failure to appear is not an element of the crime ”,[5]
•The question arises: is this a malum prohibitum or malum in se statute ? If the former, and the crime be continuous and not outlawed, this court eventually may be forced willy-nilly to find defendant guilty because of the attached label alone, without proof of his availability and without allowing him to show a valid reason for his nonpresence. The mere words of1 a statute do not determine that it is prohibitum or in se. The distinction between the two classes is nonscientific; and there has never been a real satisfactory differentiation between them. It depends in good measure upon the mores and social thought of the people. And I question whether it is not even possible for the same act to be one or the other, depending upon the circumstances under which the wrongdoer has acted.
The charge here, and by.statute, is a serious Class A misdemeanor. To eliminate the element of intent is drastic, for we were traditionally told that ‘ ‘ intent is always essential to the commission of crime * * * [although] intent may be inferred from the nature of the act ” (People v. Molineux, 168 N. Y. 264, 297). At . least there must be proof that the act complained of “ was done consciously, knowingly and deliberately” (People v. Broady, 5 N Y 2d 500, 505-507). Consequently there should be no dire results from the ineptness of draftsmen in obscuring legislative meaning, objects and goals. My conclusion that this is a 'malum in se statute is not the result of perfunctory treatment nor, I hope, 'of hazy reasoning. Intent, of course, need not be explicit; intent may be inferred by the developed facts.
I do not in any .way condone a defendant’s thumbing his nose at the court. On the contrary, I deplore it. Yet I must accept the wise words of the court in People ex rel. Cosgriff v. Craig (195 N. Y. 190, 197) that “ It is sufficient to say that in cases of doubtful construction or of conflicting statutory provisions, that interpretation should be given which best protects the rights of a person charged with an offense ”. All the more so since the provisions of a penal statute ‘ ‘ must be construed according to the fair import of their terms to promote justice and effect the objects of the law” (Penal Law, § 5.00). \Section 215.59 does *147 not change this concept, for it does not eliminate the necessity to show intention to commit the crime charged. Forty years ago, in a case in which bigamy was held not to be a continuing offense, the court stated that “ there is no duty ion the defendant to show that he has not been a fugitive from justice during the tim¿ that has elapsed between the commission of the crime and the finding of the indictment ’ ’ (People v. Reiser, 240 App. Div. 36, 40). The burden was on the People to “ show beyond a reasonable doubt that the prima facie bar of the statute is for some reason unavailing to the defendant. (People v. Brown, 238 App. Div. 155.) ” (People v. Reiser, supra, p. 38.) All that the new section 215.59 does is to shift the burden to the defendant to show he had no intention not to respond but that it was due to some uncontrollable factors.
Third, the continuing nature of the crime charged. This is the crux of the entire matter. Here, for the only time,, there is conflict between the court in Ingram (74 Misc 2d 635, supra) and the District Attorney. The former states there is indication to it “ that it was the intention of the Legislature to create a continuing offense in the charge of bail jumping” and that “intent is spelled out clearly”. The latter admits that the staff comments to the proposed OPL “ do not elucidate the matter” and that “the bail jumping statute itself does not indicate a specific legislative intent in this regard ”. With due deference to the court I accept the District Attorney’s statement of the absence of verbal legislative intent. It is much more realistic. And the one answer to the question of continuous crime is statutory interpretation (Pendergast v. United States, 317 U. S. 412; Bramblett v. United States, 97 U. S. App. D. C. 330).
Toussie v. United States (397 U. S. 112, supra) is a helpful bellwether. Defendant in that case was supposed to register under the Universal Military Training and Service Act (65 U. S. Stat. 75) upon his 18th birthday “ or within five days thereafter ”. He did not do so during that period (June 23 to June 28, 1959) or at any time thereafter. He was indicted on May 3, 1967 for this crime which was subject to a five-year Statute of Limitations (U. S. 'Code, tit. 18, § 3282). The Government argued, in opposition to defendant’s motion to dismiss the indictment as untimely, that although the crime was complete in 1959 ‘ ‘ it continued to be committed each day that Toussie did not register ’ ’. Hence it claimed, as here, that the charge was timely brought.
*148 Normally, a Statute of Limitations “ begins to run on the day of the commission of the offense ” (People v. Steiger, 154 Misc. 538, 541, supra; Toussie v. United States, supra, p. 115; United States v. Irvine, 98 U. S. 450, 452); ‘ ‘ the doctrine of continuing offenses should be applied in only limited circumstances [because otherwise it] ‘ extends the .statute beyond its stated term ’ ” (Toussie, supra, p. 115). The court did not say that the continuing crime doctrine could not be applied to a particular offense, but “ such a result should not be reached unless the explicit language of the substantive criminal statute compels such a conclusion ” (id. p. 115; italics supplied). Even the dissent agrees with this principle, stating: “Since the continuing-offense concept too freely applied can lead to tension with the purposes of a statute of limitations, we should undoubtedly approach the task of statutory interpretation with ‘ a presumption against a finding that an offense is a continuing one ’ ” (id., p. 135). The court concluded, therefore, that since the Congress hardly had the Statute of Limitations in mind when it acted and since it was ‘ ‘ reluctant to imply a continuing offense except in limited circumstances ”, “ any argument based on congressional silence is stronger in favor of not construing this Act as incorporating a continuing-offense theory” (id., p. 120).
That reasoning applies as well to this case. Legislative intent is not apparent. The words of this statute do not evince a conclusion other than that arrived at in Toussie. Cases like People v. Cox (286 N. Y. 137); People v. Kirk (62 Misc 2d 1078); People v. Gold Key Club (3 A D 2d 740) do not dilute that conclusion. In those cases the defendants ’ positive acts were for the purpose of gaining a tangible benefit which persisted. Here, defendant’s negative actions resulted in the loss of prosecution by the People. He gained nothing that he did not have originally: the right to be prosecuted within the time limitation of the statute. The People were the losers by not prosecuting in time. Justice Black put it precisely: “ A time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate .suspected criminal activity”. (Toussie, supra, p. 115).
All the People had to do here was, on the 31st day of1 default, to file a complaint and have a warrant issued. That would be the commencement of the bail jumping action (CPL 1.20, subd. 17; 100.05; People ex rel. Reibman, 242 App. Div. 282, 285, supra) and the Statute of Limitations would be effectively tolled. Unfortunately this was not done.
*149 For all of the above reasons I would, be loath not to grant this motion now. But I am constrained not to do so because of CPL 30.10 (subd. 4, par. [a]) (derived from Code Grim. Pro., § 143). Under said section, the period of defendant’s continuous absence from the State or his whereabouts “ continuously unknown and continuously unascertainable by the exercise of reasonable diligence” is excluded from the limitation of time to prosecute.
Were this a felony the Grand Jury would be enjoined from indicting unless it were shown that the statute had not run (People v. Lindenborn, 23 Misc. 426), although there is conflict among the holdings as to whether the allegation concerning limitations need appear on the face of the indictment (cf. People v. Brady, 257 App. Div. 1000; People v. Steiger, 154 Misc. 538; People v. Reiser, 240 App. Div. 36; People v. Bailey, 103 Misc. 366; People v. Buccolieri, 91 Misc. 156; People v. Kohut, 36 A D 2d 953). Regardless, the People still have the burden to prove that the statute has tolled (Kirk, Guariglia, Steiger, Brown, supra).
Less particularity is required of a misdemeanor complaint such as this, but its weakness is apparent on its face. No facts about defendant’s amenability to the court’s enforcement of its order are advanced on this motion. Nevertheless the People should not be deprived of the right to show that ‘ ‘ the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence ” so as to avoid the loss of prosecution. To that end I shall hold a hearing on March 4, 1974, in advance of either the preliminary hearing or trial.
On the surface it appears, as in Steiger (supra, p. 541) that “ no action was taken * * * by those interested in [defendant’s] prosecution”; and they are faced as well with the presumption that he was available during the period from his first arrest to the second, both in New York, since “ the law presumes a continuance of the condition until it is shown to have changed. (Nixon v. Palmer, 10 Barb. 175; Mitchell v. United States, 21 Wall. [88 U. S.] 350; Harris v. Harris, 83 App. Div. 123 ”. (People v. Reiser, supra, p. 40.)
The evidence will be confined to the single issue of whether the statute has been tolled within the purview of the statute, and further delimited by my legal conclusion that this is not a continuing crime. If the People fail in this factual burden, this motion will be granted.

. Haddock v. Haddock (201 U. S. 562, 628 [1905]).

. People v. Ingram (74 Misc 2d 635 [1973]).

. These written words may inadequately evidence the much greater amount of time pondering the problem; for disagreement does not come lightly.

. Such a motion is permitted under CPL 170.30, subd. 1, par. [d].

. See, also, People ex rel. Barnes v. Warden of Penitentiary of City of N. Y. (75 Misc 2d 291, 293) where similar statement is made.