OPINION OF THE COURT
Irving Lang, J.
What is the utility of a significant decision if nobody knows about it?
Defendant’s motion to dismiss a bail-jumping indictment on Statute of Limitations grounds raises two perplexing issues: (1) is bail jumping a continuing offense and (2) how is attention focused on a clear appellate court precedent of which neither the prosecution nor defense bar is aware and which is unlikely to be discovered?
FACTS
On November 3, 1977, Tyrone Barnes was arrested for a narcotics sale. Indicted by the Special Narcotics Grand Jury on November 15, 1977, for criminal sale of a controlled *1059 substance in the third degree and related possessory offenses, Barnes pleaded guilty to criminal sale of a controlled substance in the fifth degree on February 17, 1978. However, he withdrew that plea on April 5, 1978. On October 17, 1978, Barnes failed to appear in court. Bail was forfeited and a bench warrant was issued for his arrest.
Barnes was ultimately returned on the bench warrant on November 26, 1985. He was indicted for bail jumping in the second degree on December 4, 1985.
THE CONTENTIONS
The defendant contests the viability of the bail-jumping indictment on the ground that the eight-year hiatus between the commission of the crime and the filing of the indictment renders such indictment untimely in light of the five-year Statute of Limitations set forth in CPL 30.10 (2) (b).[1] The People oppose defendant’s motion to dismiss. They claim that bail jumping is a continuing crime for as long as the defendant remains a fugitive. Since the crime continues the statute is tolled.
ANALYSIS
The provision under which the defendant is charged reads as follows: "A person is guilty of bail jumping in the second degree when by court order he has been released from custody or allowed to remain at liberty, either upon bail or upon his own recognizance, upon condition that he will subsequently appear personally in connection with a charge against him of committing a felony, and when he does not appear personally on the required date or voluntarily within thirty days thereafter.” (Penal Law § 215.56.)
The lower court cases which have addressed the issue of whether bail jumping is a continuing offense have reached diverse holdings. In People v Ingram (74 Misc 2d 635) the court found that bail jumping is a continuing crime and remains unabated until the defendant is returned to the jurisdiction of the court. According to Ingram, the Statute of Limitations does not begin to run until the defendant appears or is apprehended. Justice Goldfluss, analyzing Penal Law *1060 §§ 215.56 and 215.59[2] in tandem, held that the Legislature’s creation of an affirmative defense based upon a defendant’s voluntary appearance (or unavoidable nonappearance) demonstrates that the defendant is under a continuing duty to appear beyond the 30th day. He reasoned that the Legislature, by enacting such affirmative defense, considers a defendant who continues to secrete his whereabouts as engaging in continuing wrongful conduct (People v Ingram, supra, at p 640).
In People v McAllister (77 Misc 2d 142), the opposite conclusion was reached. There, the court held that bail jumping is not a continuing crime but that it is committed on a date certain; on the 31st day following the defendant’s nonappearance, the crime is complete and the Statute of Limitations begins to run. Rejecting Ingram’s (supra) interpretation of Penal Law § 215.59, the McAllister court reasoned that the effect of the affirmative defense section is merely to shift the burden to the defendant to show that his failure to respond was unintentional and uncontrollable. It is not indicative of the Legislature’s desire to make bail jumping a continuing crime. Conceding that the bail-jumping statute is somewhat ambiguous with regard to legislative purpose, McAllister relied on the precept that " '[s]ince the continuing-offense concept too freely applied can lead to tension with the * * * statute of limitations, we should undoubtedly approach the task of statutory interpretation with "a presumption against a finding that an offense is a continuing one” ’ ” (supra, at p 148, citing Toussie v United States, 397 US 112, 135; see also, People ex rel. Barnes v Warden, 75 Misc 2d 291, 293 [the crime of bail jumping is not a continuing one]).
In my view, the Ingram (supra) conclusion that the Legislature intended to create a continuing offense because the defendant is duty bound to appear beyond the 30th day is *1061 incorrect. Penal Law § 215.59 constitutes an affirmative defense to the completed crime of bail jumping. It does not by any reasonable interpretation extend the actual commission of the crime. The 30-day interval is an element of the crime (People v Bayless, 89 Misc 2d 206). If a defendant is arrested prior to the expiration of the 30-day period, the bail-jumping indictment must be dismissed (People v Shurn, 71 AD2d 610, affd 50 NY2d 914). The analysis in Ingram (supra) is flawed because the court is confusing the offense of bail jumping with the continuing status of being a bail jumper. The crime is complete 30 days after the defendant fails to appear in court. Although a defendant’s status as a bail jumper continues until such time as he appears or is apprehended, the crime is finalized and the limitations clock begins to run 31 days subsequent to defendant’s absence.
This "status vs. crime” distinction applies in analogous contexts. For example, when a person commits bigamy, the crime is complete when he engages in the second marriage illegally. While he continues to be a bigamist as long as the illegal marriage continues, for Statute of Limitations purposes, the crime occurred upon entering the second marriage. Thus, a person accused of bigamy may only be prosecuted within five years of the illegitimate union (see, People v Reiser, 240 App Div 36, 40, holding that bigamy is not a continuing offense).
Another analogy relates to the draft dodger. In Toussie v United States (supra), the Supreme Court held that the defendant’s failure to register for the draft upon his 18th birthday or within five days thereafter was not a continuing offense. While the individual continues to have a duty to register and maintains the status of one who has violated that duty, in the absence of Congress’ clear expression to the contrary, the five-year Statute of Limitations begins to run at the initial failure to sign up. "[T]here is nothing inherent in the nature of failing to register that makes it a continuing offense.” (397 US, at p 122; see also, Brown v Ohio, 432 US 161,169, n 8.)
I find that the New York Legislature similarly did not draft the bail-jumping statute to provide for a separate crime for each day that the defendant fails to appear in court. Had such a construction been intended, the statute need only have stated that each day a defendant is absent, a distinct offense is committed. Lawmakers have not hesitated to define crimes as continuing offenses, in unambiguous terms, when that is the desired effect. (See, People v Fremd, 41 NY2d 372, 374, where *1062 the Court of Appeals upheld the validity of Code of Ordinances of the City of Long Beach § 13-10 [a] which specifically provided, "[e]ach day such violation continues shall constitute a separate violation”; Toussie v United States, supra, at p 120, n 15, where the Supreme Court refers to 18 USC § 3284, which provides that concealment of a bankrupt’s assets "shall be deemed to be a continuing offense * * * and the period of limitations shall not begin to run until * * * final discharge or denial of discharge”; cf. Village of Southampton v Platt, 43 NY2d 848.)
Thus, while the draft dodger remains a draft dodger, and the bigamist continues to be a bigamist and the bail jumper remains a bail jumper, the respective crimes are complete as of specific dates and the Statute of Limitations runs from those dates.
SHEPARD DOES NOT LEAD
If the three lower court cases discussing the Statute of Limitations as it relates to bail jumping were "Shepardized”, no appellate court cases would be discovered. Similarly, a search of McKinney’s Consolidated Laws of New York for a higher court precedent would be fruitless. Yet the Appellate Division, First Department, has definitively ruled on this question. In People v Martinez (60 AD2d 551 [1st Dept 1977]), the Appellate Division expressly held that bail jumping is a single, noncontinuous offense. "[B]ail jumping * * * is defined simply as nonappearance on a required date” (p 551). Counsel’s failure to find the Martinez decision is understandable, since the commonly used and most expedient research tools are not helpful in this instance. For example, if one consults McKinney’s Consolidated Laws of New York, Book 11A annotations to CPL 30.10 under the topic "bail jumping — continuing nature of offense,” the case is not listed. Nor is it cited in the McKinney’s Consolidated Laws of New York, Book 39 annotations to the Penal Law §§ 215.56, 215.57, or 215.59. Finally, reference to "limitations of prosecution — continuing offenses,” in Criminal Law, West’s New York Digest 3d, vol 9, key Nos. 149-150 does not reveal the Martinez decision.
The reason why it is so difficult to find this short memorandum opinion is simple. The Martinez (supra) case did not involve the Statute of Limitations. Rather, it related to the *1063 effective date of the predicate felony law. The Martinez case can be retrieved by the use of a computer (i.e., Westlaw, by entering variations of the phrase “continuous offense bail jumping”) or by Shepardizing Penal Law § 215.57. The former method, of course, may be unavailable to many attorneys who do not enjoy the luxury of computer-assisted research, and the latter method is a "hit or miss” proposition — that is, it is impossible to ascertain from simply looking at Shepard’s New York Supreme Court Citations which issue raised by the statute is analyzed in the listed cases. People v Martinez (supra) is so difficult to find because the editors at West Publishing Co. indexed it solely as a "habitual offender” case (Criminal Law, West’s New York Digest 3d, vol 13, key No. 1202 [7]). Its import as a dispositive limitations case for the crime of bail jumping was completely overlooked. The question arises: how can a case which is clearly controlling on a particular issue properly serve as a precedent when it is virtually unknown and undiscoverable? This dilemma evokes the age-old query — is there a sound if a tree falls in the forest but nobody hears it? Apparently, the District Attorneys of New York and Bronx Counties have not yet "heard” the holding in the Martinez case. Why else do they continue to indict people for bail jumping, when the only conceivable theory supporting such a charge has specifically been rejected by the First Department?
CONCLUSION
The Legislature’s failure to expressly incorporate a continuing offense theory compels the finding that bail jumping is a single offense, regardless of its duration. The prosecutor may not avoid the plain meaning of Penal Law § 215.56, by the simple expedient of parsing a single offense into a series of continuous acts. A defendant’s failure to appear on a required date is not transformed into continuous crime merely because that failure extends over a considerable period of time. The People could avoid this problem by simply indicting the defendant or drawing a felony complaint within the five-year period, thereby tolling the Statute of Limitations.
Accordingly, the defendant’s motion to dismiss the bail-jumping indictment as untimely is granted.

. CPL 30.10 (2) (b) provides: "A prosecution for any * * * felony [other than a class A felony] must be commenced within five years after the commission thereof’.

. Penal Law § 215.59 states in part:
"In any prosecution for bail jumping * * * it is an affirmative defense that:
"1. The defendant’s failure to appear on the required date or within thirty days thereafter was unavoidable and due to circumstances beyond his control; and
"2. During the period extending from the expiration of the thirty day period to the commencement of the action, the defendant either:
"a. appeared voluntarily as soon as he was able to do so, or "b. although he did not so appear, such failure of appearance was unavoidable and due to circumstances beyond his control.”