[No. D010824. Fourth Dist., Div. One. May 2, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
RATKO DJEKICH, Defendant and Appellant.

1214

COUNSEL

Richard D. Muir for Defendant and Appellant.

Edwin L. Miller, Jr., District Attorney, Thomas F. McArdle and Karen I. Tripp, Deputy District Attorneys, for Plaintiff and Respondent.

OPINION

**WORK, Acting P. J.**—Following a plea of nolo contendere to 10 misdemeanor counts of violating San Diego County Zoning Ordinance (Zoning Ordinance) section 1006(a) (using land or building zoned single-family residential for a different purpose), Ratko Djekich was placed on probation after imposition of sentence was suspended. Among other conditions, he was ordered to pay a $1,000 fine for each count. After unsuccessfully trying to have the fine probation condition modified by staying nine fines pursuant to Penal Code[1] section 654, Djekich appealed to the appellate department of the superior court. That court affirmed the judgment and certified transfer to this court pursuant to California Rules of Court,[2] rule 63, to settle a question of law it phrased as: "Does San Diego County Zoning Ordinance § 7703a, and similar ordinances, providing for successive punishment for

---

[1] All statutory references are to the Penal Code.
[2] All rule references are to the California Rules of Court.

each day of a continuing violation of the zoning laws,[3] run afoul of Penal Code § [654], prohibiting multiple punishment for the same act or omission?" We ordered transfer and requested supplemental briefing regarding potentially dispositive issues. Because the legislative body has expressly declared each day of designated continuous criminal conduct may be separately punished, we conclude Djekich was properly convicted of and punished for multiple offenses under the ordinance without violating section 654. Accordingly, we deny the relief prayed for by Djekich.

I

FACTUAL AND PROCEDURAL BACKGROUND

On October 8, 1986, Djekich purchased a single family dwelling and workshop situated on property zoned R-1 for single family residences. By December, both the dwelling and the workshop were rented as residences for $475 per month. A few months later, the San Diego County Department of Planning and Land Use (County) found both buildings had been illegally converted into duplexes. These violations were explained to Djekich and he was asked to correct them. He did not. On May 13, a notice of continuing violations was sent to Djekich giving him time to correct them. Djekich continued to ignore the County's warnings and to collect rent for each of the four units at $475 per month (totaling $1,900 monthly). Djekich was again notified on October 8 that citations for violations would be given if immediate corrective action was not taken. On October 26, Djekich purportedly sold the property to Rista Krulevich. Although Djekich was cited for the zoning violations on October 27, he did not mention the sale of the property. In fact, he continued to rent the units, collect rent and request repairs for the property.[4] It is estimated that between December 6, 1986 and August 1988, Djekich collected rents totaling between $9,000 and $11,000.

On January 6, 1988, a complaint was filed in the San Diego County Municipal Court charging Djekich with 28 counts of zoning ordinance violations: 14 odd-numbered counts charging violations of Zoning Ordinance section 4310(a) (maintaining dwelling units in excess of the permitted single, detached, one dwelling unit per lot); and 14 even-numbered counts charging violations of Zoning Ordinance section 1006(a) (using land or building zoned for single-family residential for another use). Daily violations of each section were charged for April 23, April 24, May 27, June 23,

---

[3] "Each day or portion of a day that any person violates or continues to violate this ordinance constitutes a separate offense and may be charged and punished separately without awaiting conviction on any prior offense."

[4] The appearance of "business as usual" caused zoning officials to believe Djekich transferred title in order to avoid correction of the violations.

June 29, July 7, July 8, July 28, August 10, August 21, August 26, September 15, October 8, and October 26, 1987.

Pursuant to a plea bargain Djekich, acting as his own attorney, pled nolo contendere to 10 counts of violating Zoning Ordinance section 1006(a) and executed a *Harvey*[5] waiver agreeing the underlying facts of the dismissed charges could be considered at sentencing. The change of plea form stated the People would seek a $10,000 fine, but would not request a jail term.[6] As agreed, the People dismissed the remaining 18 counts. On August 17, Djekich was placed on probation on condition he pay a $1,000 fine per count, totaling $10,000. Djekich later appeared with counsel and moved to modify, arguing the consecutive fines violated section 654. The motion was denied on October 25. Over the opposition of the People, the trial court granted Djekich's request to have the judgment entered as of that date and stay the balance of the payments pending appeal ($9,000). Djekich filed his notice of appeal on November 23.

## II

### This Court Has Jurisdiction to Hear This Appeal

Before the appellate department of the superior court, the People challenged the court's jurisdiction because Djekich failed to file a timely notice of appeal. Because the municipal court's judgment was entered August 17, 1988, the notice of appeal had to be filed within 30 days of that date. (Rule 182(a).) The People correctly assert the trial court exceeded its jurisdiction by granting Djekich's motion to deem the judgment entered as of October 25 in an attempt to resuscitate the time within which to file a notice of appeal. Although Djekich's notice of appeal was untimely, we conclude the issue posed and certified here is reviewable by writ of habeas corpus vesting the appellate department of the superior court and this court with jurisdiction to treat this matter as a writ of habeas corpus.

Pursuant to rule 182, a notice of appeal in a criminal case from a judgment or appealable order of the municipal court must be filed within 30 days after the rendition of the judgment or the making of the order. "If the notice of appeal is not filed within the time prescribed, the appeal shall be void and of no effect." (Rule 182(a).) Although rule 186(b) expressly excepts the failure to file a timely notice of appeal from its authorization of the superior court to relieve a party from default occasioned by the failure to

---

[5] *People* v. *Harvey* (1979) 25 Cal.3d 754 [159 Cal.Rptr. 696, 602 P.2d 396].

[6] Under Zoning Ordinance section 7703(b), Djekich was subject to a fine not exceeding $1,000 or jail time not exceeding six months, or both for each count. (See § 19.)

comply with the rules upon a showing of good cause, the courts recognize certain circumstances will excuse failure to file a timely notice of appeal. (See *People* v. *Riley* (1977) 73 Cal.App.3d Supp. 1, 3-6 [141 Cal.Rptr. 16], and cases cited therein.) Where no exception applies a trial court is without power to allow the filing of a belated notice of appeal. (*People* v. *Leftwich* (1979) 97 Cal.App.3d Supp. 6, 8 [158 Cal.Rptr. 758].) It follows that if a trial court lacks the power to permit filing of a belated notice of appeal, it is without the authority to "reenter the judgment" at a later date solely to avoid the sanctions of rules 182 and 186(b).

Relying on section 1466 and *People* v. *Woods* (1978) 84 Cal.App.3d 149, 154 [148 Cal.Rptr. 312], Djekich alternatively asserts the October 25 order may be construed as an "order made after judgment affecting his or her substantial rights" pursuant to section 1466, subdivision (b)(2), in that the court's order denied his motion to modify his "sentence" to conform with section 654 and reimpose the original sentence as of that date. We are unpersuaded. His reliance on *Woods* is misplaced. There, this court held that a probation revocation order affected the substantial rights of the defendant and thus was appealable under section 1466. Here, Djekich's motion to modify was denied. Because the order granting probation was appealable, Djekich's failure timely to do so precludes this belated attempt to appeal from an order denying modification. To hold otherwise would condone extending the jurisdictional time limit for filing appeals through bootstrapping. (*People* v. *Lynn* (1978) 87 Cal.App.3d 591, 592-593 [151 Cal.Rptr. 562].)

However, a defendant who accepts probation may seek relief from the restraint of any alleged invalid probation condition on appeal from the order granting probation or on habeas corpus. (*In re Bushman* (1970) 1 Cal.3d 767, 776 [83 Cal.Rptr. 375, 463 P.2d 727], disapproved on other grounds in *People* v. *Lent* (1975) 15 Cal.3d 481, 486, fn. 1 [124 Cal.Rptr. 905, 541 P.2d 545].)

"Although habeas corpus cannot serve as a substitute for appeal to review a determination of fact made on conflicting evidence [citations], it may be used to review the validity of a sentence or order of probation that can be corrected without the redetermination of any questions of fact. [Citations.]" (*In re Bushman, supra,* 1 Cal.3d at p. 776.) ██ ██ Accordingly, mindful a denial of habeas corpus is not appealable by the petitioner, but may be filed anew in a higher court (*Gardner* v. *California* (1969) 393 U.S. 367, 368 [21 L.Ed.2d 601, 603, 89 S.Ct. 580]; *Loustalot* v. *Superior Court* (1947) 30 Cal.2d 905, 913 [186 P.2d 673]; *People* v. *Brotherton* (1966) 239 Cal.App.2d 195, 199 [48 Cal.Rptr. 513]), we elect to treat this matter as a writ of habeas corpus as a matter of judicial economy and efficiency.

## III

### WHETHER SECTION 654 PROHIBITS THE IMPOSITION OF THE MULTIPLE FINES

 Djekich contends punishing him separately for each day he violated the Zoning Ordinance as literally authorized by section 7703(a) of that Zoning Ordinance violates section 654, because his offenses were committed during an indivisible course of conduct having a single objective. Accordingly, he contends the court erred in failing to stay the fines on all but one count.

Section 654 provides:

"An act or omission which is made punishable in different ways by different provisions of this code may be punished under either of such provisions, but in no case can it be punished under more than one; an acquittal or conviction and sentence under either one bars the prosecution for the same act or omission under any other." Section 654's sentencing limitation applies to penal provisions of other codes (*In re Farr* (1976) 64 Cal.App.3d 605, 613 [134 Cal.Rptr. 595]; *People* v. *Smith* (1984) 155 Cal.App.3d 1103, 1153 [203 Cal.Rptr. 196]), including municipal ordinances (*People* v. *Manago* (1964) 230 Cal.App.2d 645, 647 [41 Cal.Rptr. 260]; *People* v. *Williams* (1962) 207 Cal.App.2d Supp. 912, 919 [24 Cal.Rptr. 922]). It is designed only to prohibit double punishment and not to prevent double conviction. (*People* v. *Miller* (1977) 18 Cal.3d 873, 885 [135 Cal.Rptr. 654, 558 P.2d 552]; *People* v. *Greene* (1973) 34 Cal.App.3d 622, 654 [110 Cal.Rptr. 160]; *People* v. *Lyons* (1971) 18 Cal.App.3d 760, 780 [96 Cal.Rptr. 76].) Whether section 654 applies to a course of criminal conduct giving rise to the commission of more than one offense, each of which can be committed without committing any other, depends upon whether a separate and distinct act underlies each conviction or whether a single act or indivisible conduct has been committed in such a fashion so as to violate more than one statute. It is the latter scenario in which multiple punishment is precluded by section 654. (*Neal* v. *State of California* (1960) 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]; *People* v. *Knowles* (1950) 35 Cal.2d 175, 187 [217 P.2d 1].) Here, as we shall explain, because the legislative entity has elected to statutorily divide continuous criminal conduct under the ordinance into a series of separately punishable acts, Djekich can be properly convicted of and punished for multiple separate and distinct offenses under the same penal provision without violating the multiple punishment prohibition of section 654.

IV

## Djekich May Suffer Multiple Separate and Distinct Convictions for His Criminal Conduct Under the Ordinance

██ Absent express legislative direction to the contrary, where the commission of a crime involves continuous conduct which may range over a substantial length of time and defendant conducts himself in such a fashion with but a single intent and objective, that defendant can be convicted of only a single offense. For example, a defendant can be only convicted once for failing to provide for a child pursuant to section 270 even though no support may have been provided for several continuous months. (*People* v. *Gregori* (1983) 144 Cal.App.3d 353, 360 [192 Cal.Rptr. 555]; *People* v. *Nelson* (1940) 42 Cal.App.2d 83, 86 [108 P.2d 51]; *People* v. *Wallach* (1923) 62 Cal.App. 385, 390 [217 P. 81].) Similarly, "[v]iolations of certain other offenses frequently involve repetitive or continuous conduct. (See *People* v. *Ewing* (1977) 72 Cal.App.3d 714, 717 . . . and cases cited representing continuous conduct involving child abuse; see also *People* v. *Packard* (1982) 131 Cal.App.3d 622, 626-627 . . . for continuing conduct representing a single theft.)" (*People* v. *Gregori, supra,* 144 Cal.App.3d at p. 361; see *People* v. *Kronemyer* (1987) 189 Cal.App.3d 314, 363-364 [234 Cal.Rptr. 442].) Consequently, under such circumstances where a defendant acts in a constant fashion but with a single intent and objective in mind, that defendant can only be convicted of a single offense. (See also *Conn* v. *Superior Court* (1987) 196 Cal.App.3d 774, 786-788 [242 Cal.Rptr. 148] [regarding propriety of multiple convictions of contempt and declaring the " 'crucial question' in determining whether separate adjudications of contempt are proper is whether these separate adjudications 'were based upon separate insults to the authority of the court, not whether the insults happened to occur on the same or different days.' "]; *Ex Parte Snow* (1887) 120 U.S. 274, 280-286 [30 L.Ed. 658, 661-663, 7 S.Ct. 556, 559-561].)

██ Unlike the legislative enactments analyzed in the foregoing decisions, the Zoning Ordinance section 7703(a) specifically authorizes a separate punishment for each violation and defines each day's continuance a distinct offense. (See fn. 2, *ante*.) Although such legislative treatment is not unique (see similar language in *Sechrist* v. *Municipal Court* (1976) 64 Cal.App.3d 737, 742, fn. 2 [134 Cal.Rptr. 733], citing Los Angeles County Zoning Ordinance § 113; see also the punishment for trespass in § 555), we have found no reported California decision which considers its legal effect. Accordingly, we look to analogous authority.

Preliminarily, a provision declaring each day a violation continues a separate offense is designed to make enforcement of a zoning ordinance

more facile and more effective. (See *Wright* v. *City of Guthrie* (1931) 150 Okla. 171 [1 P.2d 162, 164]; see 2 Yokley, Zoning Law and Practice (4th ed. 1978) § 15-2, p. 317, fn. 5.) Indeed, it is argued that if the provision is not included, the result in many cases is that a chronic violator will simply "buy a license" with a small fine, charge it up to the "cost of doing business" and continue to violate the zoning ordinance. (Bair & Bartley, The Text of a Model Zoning Ordinance (3d ed. 1966) § 16, pp. 67-68.)[7]

Emphasizing that aggregated penalties for violations of prohibitory laws will be permitted only where the Legislature has unmistakably revealed its intent to permit cumulative recoveries (*People* v. *Spencer* (1911) 201 N.Y. 105 [94 N.E. 614, 615-616]), the New York Court of Appeals has upheld a municipal ordinance declaring "each day such violation continues shall constitute a separate violation" as valid, declaring:

"The mere fact that [an] ordinance provides for a separate violation for each day of its continuance does not result in invalidity since, in the absence of a showing of impossibility of compliance, 'the courts have long sustained a pyramiding of penalties as valid means of control' [citation]." (*People* v. *Fremd* (1977) 41 N.Y.2d 372 [393 N.Y.S.2d 331, 332-333, 361 N.Ed.2d 981], quoting *Oriental Boulevard Company* v. *Heller* (1970) 27 N.Y.2d 212 [316 N.Y.S.2d 226, 230, 265 N.E.2d 72].)[8] Several other jurisdictions have implicitly sustained the concept of imposing cumulative criminal fines for maintaining a nonconforming use in violation of zoning regulation. (See,

---

[7]Otherwise, "the imposition of criminal sanctions is, in many instances, an imperfect and belated remedy." (4 Anderson, American Law of Zoning 3d (1986) § 31.01, p. 746.) Mindful the emphasis in zoning enforcement is upon prevention, rather than punishment and the attainment of conforming uses (*ibid.*; *City of Minneapolis* v. *F and R, Inc.* (Minn. 1980) 300 N.W.2d 2, 4), injunctive relief "is probably the most efficient way for a local governmental unit to deal with continuing zoning violations. [Citations.] Compared to injunctive relief, repeated prosecution for a violation of a zoning ordinance, seeking imposition of a fine or jail term, is an inadequate method of attaining the goal of a zoning ordinance—compliance. The purpose of use restrictions is not punishment but the attainment of conforming uses. An injunction ordering compliance with use restrictions is peculiarly suited to this end." (*City of Minneapolis* v. *F and R, Inc., supra*, 300 N.W.2d at p. 4.)

[8]We note another New York appellate court of inferior jurisdiction confronted by a similar zoning ordinance provision declaring "[e]ach day that a violation is continued uncorrected shall constitute a separate offense" held it invalid, because it attempted to impose cumulative fines or penalties for a single but continuing violation of a zoning ordinance. (*People* v. *Multari* (1987) 135 Misc.2d 913 [517 N.Y.S.2d 374, 377].) However, *Multari* relied on case precedent which involved enabling legislation which did not permit municipalities to enforce ordinances through the imposition of cumulative fines in excess of $250 for a single but continuing violation, giving rise to the inference that municipality was governed by the same enabling legislation. (See *Village of Southampton* v. *Platt* (1978) 43 N.Y.2d 848 [402 N.Y.S.2d 1005, 1006, 373 N.E.2d 1229]; *Incorporated Village of Mill Neck* v. *Fronsdal* (1972) 39 A.D.2d 549 [332 N.Y.S.2d 53, 55]; see *People* v. *Briary Improvement Corp.* (1973) 77 Misc.2d 797 [357 N.Y.S.2d 336, 337], affd. (1974) 34 N.Y.2d 788 [358 N.Y.S.2d 775, 315 N.E.2d 814].)

e.g., *State* v. *Scherer* (1986) 11 Kan.App.2d 362 [721 P.2d 743, 748-750]; *Town of Ogunquit* v. *McGarva* (Me. 1990) 570 A.2d 320, 321.)[9] Consequently, some courts have sustained the accumulation of daily violations with their accompanying fines as a legitimate leverage for local municipalities to deal with chronic violators. (See separate conc. opn. of Munder, Acting P. J., in *Incorporated Village of Mill Neck* v. *Fronsdal, supra,* 332 N.Y.S.2d at p. 56.)[10]

In determining the power of a legislative entity to statutorily define continuous conduct as a series of separate crimes, it is helpful to review the double jeopardy clause of the federal and state Constitutions (U.S. Const., 5th & 14th Amends.; Cal. Const., art. I, § 15) and the prohibition against multiple punishment for the same offense or criminal conduct at one trial regarding whether a single statute creating multiple units of prosecution for conduct occurring as part of the same criminal transaction is outside the scope of the cited prohibition. (*Randall Book Corp.* v. *State* (1989) 316 Md. 315 [558 A.2d 715, 719-720].) The relevant principle drawn here from the concept of the double jeopardy guarantee is that it is designed principally as a restraint on courts and prosecutors, leaving the legislature free to define crimes and fix punishments. (*Brown* v. *Ohio* (1977) 432 U.S. 161, 165 [53 L.Ed.2d 187, 193-194, 97 S.Ct. 2221]; Notes and Comments, *Twice in Jeopardy* (1965) 75 Yale L.J. 262, 302-313.)[11] Consequently, where legislatively defined offenses involve continuous conduct unseparated in any fashion artificially by the legislature, "[t]he Double Jeopardy Clause is not such a fragile guarantee that prosecutors can avoid its limitations by the simple expedient of dividing a single crime into a series of temporal or

---

[9] Within the civil penalty context, such a provision authorizing the imposition of a minimum civil penalty per violation, with each day constituting a separate violation, could not because of its civil character be subject to challenge under the constitutional provisions prohibiting excessive fines. Moreover, the time awaiting trial may be factored into the equation to determine the amount of forfeiture, for the presumption of innocence does not apply and one is thus not entitled to a court decision resolving whether there was a violation before cumulative assessment and forfeiture. (*Village of Sister Bay* v. *Hockers* (1982) 106 Wis.2d 474 [317 N.W.2d 505, 508].)

Alternatively, some jurisdictions obtain enforcement through civil contempt penalties accumulated on a daily basis for violating a court order enjoining a nonconforming use under a zoning ordinance. (See, e.g., *Woodruff* v. *Township of Lower Southampton* (1982) 68 Pa. Commw. 171 [448 A.2d 692, 693-694].)

[10] After suffering a conviction under such an ordinance, a chronic violator cannot obtain an injunction restraining the municipality from prosecuting again. (*G & S Mortgage & Invest. Corp.* v. *City of Evanston* (1970) 130 Ill.App.3d 370 [264 N.E.2d 740, 745].)

[11] Within the federal context, "[t]he Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly with the Congress." (*Whalen* v. *United States* (1980) 445 U.S. 684, 689 [63 L.Ed.2d 715, 722, 100 S.Ct. 1432, 1436].)

spatial units." (*Brown* v. *Ohio, supra,* 432 U.S. at p. 169 [53 L.Ed.2d at p. 196]; see also, *Johnson* v. *Morgenthau* (1987) 69 N.Y.2d 148 [512 N.Y.S.2d 797, 799, 505 N.E.2d 240]; *Parker* v. *United States* (D.C. 1984) 476 A.2d 173, 176.) Similarly, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." (*Missouri* v. *Hunter* (1983) 459 U.S. 359, 366 [74 L.Ed.2d 535, 542, 103 S.Ct. 673, 678].) However, the double jeopardy clause is not violated by prosecution under a statute clearly designed by the legislature to permit severability of otherwise continuous criminal conduct and thus accumulation of convictions and multiple punishment. (*Brown* v. *Ohio, supra,* 432 U.S. at p. 169, fn. 8 [53 L.Ed.2d at p. 196]; *Parker* v. *United States, supra,* 476 A.2d at pp. 176-177; Notes and Comments, *Twice in Jeopardy, supra,* 75 Yale L.J. at p. 313.) ■ ■■ ■ In other words, a penal provision reflecting a clear legislative intent to permit pyramiding of punishment through cumulative convictions by providing for a separate offense for each day a defendant continues his/her criminal conduct is valid (*Parker* v. *United States, supra,* 476 A.2d at pp. 176-177; *People* v. *Barnes* (1986) 130 Misc.2d 1058 [499 N.Y.S.2d 343, 345-346]; see *Brown* v. *Ohio, supra,* 432 U.S. at p. 169, fn. 8 [53 L.Ed.2d at p. 196]), provided the fine imposed is not unconstitutionally excessive or the sentence imposed does not constitute cruel and/or unusual punishment (see *State* v. *Scherer, supra,* 721 P.2d at pp. 749-750; *Randall Book Corp.* v. *State, supra,* 558 A.2d at pp. 722-724).[12]

■ Djekich has not asserted either his aggregated fine is unconstitutionally excessive or his three-year probationary period accompanied by the implied threat of potentially five years incarceration is so disproportionate as to constitute cruel or unusual punishment. Because the Zoning

---

[12] Within our tripartite system of government, one of the principal functions of the Legislature is to define crimes and prescribe punishments. (*People* v. *Bauer* (1969) 1 Cal.3d 368, 375 [82 Cal.Rptr. 357, 461 P.2d 637, 37 A.L.R.3d 1398].) However, that legislative authority is ultimately circumscribed by article I, section 17 of the California Constitution and the Eighth Amendment to the United States Constitution forbidding the infliction of cruel or unusual punishment or the imposition of excessive fines. (*In re Lynch* (1972) 8 Cal.3d 410, 414 [105 Cal.Rptr. 217, 503 P.2d 921]; *People* v. *Magoni* (1925) 73 Cal.App. 78, 80 [238 P. 112].) Although a legislative entity is provided the broadest discretion possible in enacting penal provisions and in specifying punishment for criminal offenses, the final judgment as to whether the punishment it decrees exceeds constitutional limits is a judicial function. (*People* v. *Anderson* (1972) 6 Cal.3d 628, 640 [100 Cal.Rptr. 152, 493 P.2d 880].) " ' "Statutes must be upheld unless their unconstitutionality clearly, positively and unmistakenly appears." ' " (*In re Lynch, supra,* 8 Cal.3d at p. 415, quoting *In re Dennis M.* (1969) 70 Cal.2d 444, 453 [75 Cal.Rptr. 1, 450 P.2d 296].) A fine or punishment may be held unconstitutional if it is so excessive or unusual by being so disproportionate to the offense committed that it shocks public sentiment and conscience while offending fundamental notions of human dignity. (*In re Lynch, supra,* 8 Cal.3d at p. 424; *People* v. *Magoni, supra,* 73 Cal.App. at p. 80.)

Ordinance properly permits separate convictions for each day Djekich used his premises for purposes other than as a single-family residence, imposing separate fines for each of his 10 admitted violations did not violate section 654.

DISPOSITION

Petition denied.

Todd, J., and Benke, J., concurred.