*89 OPINION OF THE COURT
Charles J. Heffernan, Jr., J.
This case presents the question, on facts of apparent first impression, whether efforts by a civilian complainant to locate a defendant, unaided by any official State action, suffice to constitute the statutory exception under CPL 30.10 (4) (a) (ii) so as to make this prosecution timely despite its having been initiated outside the two-year Statute of Limitations for misdemeanor charges provided by CPL 30.10 (2) (c). For the reasons discussed below, this court finds that on the facts at bar this question must be answered in the negative.
Defendant is charged with one count of criminal mischief in the fourth degree in violation of Penal Law § 145.00 (1). By notice of motion and supporting papers dated May 20, 1992, he has moved for dismissal of the action as untimely brought.
The People respond by alleging that the Statute of Limitations was tolled pursuant to CPL 30.10 (4) (a); that the People exercised reasonable due diligence in their attempts to locate the defendant; and that their efforts were unsuccessful, in part, because of misinformation provided by the defendant to his former employer.
Upon receipt of the People’s response, counsel for defendant requested and received permission to file a reply, which consisted of counsel’s memorandum in rebuttal, discussed below, dated July 24,1992.
Since the submissions of the parties raised issues of fact, this court ordered a hearing to resolve the motion. (CPL 170.45, 210.45 [6]; People v McAllister; 77 Misc 2d 142 [Crim Ct, Kings County 1974].)
THE EVIDENCE AT THE HEARING
An evidentiary hearing was held on August 7 and 12, 1992. The People called one witness, Craig Eugene Ryan, the complainant, and introduced no exhibits. Defendant called himself and Kagijha Rul Have as witnesses, and introduced three exhibits: (1) a 1989 W-2 and earnings summary generated by Stringfellows of N.Y. Ltd., addressed to defendant under a slight variation of his name, at a building on 35th Avenue in Long Island City, Queens County (exhibit A); (2) a copy of a United States individual income tax return for 1989 for defendant and his wife dated April 13, 1990, listing that same address (exhibit B); and (3) a copy of a page of the 1992 NYNEX telephone directory for Queens County containing a *90 listing for defendant on 44th Avenue, Long Island City (exhibit D).
On the basis of the submissions of the parties, the evidence at the hearing, and the arguments of counsel, this court makes the following determinations.
FINDINGS OF FACT

The Parties’ Relationship:

Complainant and defendant were co-workers at Stringfellows, a Manhattan bistro, from 1986 through November 16, 1989, when defendant was fired. Defendant had listed his name on his employment application there in a slightly different form than appears on this docket. During those three years they had a cordial relationship, defendant remaining a busboy while complainant was promoted, first to supervisor of busboys and later to head bartender. While they were coworkers, complainant showed defendant his 1985 Buick Rivera automobile, and advised defendant as to which type car defendant should purchase.

The Incident At Issue:

At approximately 3:00 a.m. on November 16, 1989, at the end of his work shift, defendant was summoned to the office of the manager of Stringfellows, Julian Russell. There, in the presence of complainant, defendant was fired. Defendant became enraged, cast sexual insults toward complainant’s mother, and stormed out of the office. A few minutes later, from a window inside the club, complainant saw defendant at complainant’s automobile which was parked a few hundred feet from the club. Complainant saw defendant throw a bottle through the car window and scratch its trunk. Complainant immediately ran from the club to the car, but arrived too late, as defendant had fled. Complainant then drove to the local police precinct house where he reported the incident.

The Efforts To Locate Defendant:

Later that day, before his usual work shift began, complainant reported to Stringfellows in an effort to intercept defendant before the latter picked up his final paycheck. By the time complainant arrived, however, defendant had already been paid and had departed.
At that point, complainant began what proved to be a futile *91 attempt to locate defendant before the expiration of the two-year Statute of Limitations provided by CPL 30.10 (2) (c). Complainant first pulled defendant’s job application from club files and telephoned the phone number listed thereon. The woman who answered the phone denied both that she knew defendant and that he lived at that address. Complainant then canvassed other employees at the club and obtained from them a second telephone number for defendant, which he called, with results similar to his first telephone effort. Next, complainant gave the police both of those telephone numbers. While police told complainant that they would be in contact with him, no such contact occurred. Indeed, as the People conceded at the hearing, the police did nothing with this information, making neither any investigation of the complaint nor any attempt to locate defendant.
Complainant also obtained an address for defendant (the location of which complainant did not recall at the hearing), and went looking for defendant in Brooklyn, without success. Complainant did not look up defendant’s name in any phone directory.
After the two telephone calls and the visit to the Brooklyn address, complainant again contacted defendant’s former coworkers at Stringfellows, in an effort to discover a new lead to defendant’s location. All that complainant could learn was that defendant had bragged about "getting” complainant.
Complainant also contacted personnel at other bars, restaurants and night clubs near Stringfellows to see if any knew defendant’s whereabouts. He did so because it was the practice among such establishments to assist one another in various ways, and also because employers and staffs at different clubs often knew one another. When this effort proved unsuccessful, complainant ran out of leads to follow in seeking to locate defendant.[2]
Some 28 months later, in March of 1992, complainant encountered defendant by chance in the Brooklyn office of the New York State Department of Motor Vehicles (DMV). Defendant was then arrested, approximately four months after the expiration of the two-year Statute of Limitations for the crime at issue.

*92
Defendant’s Locations At Relevant Times:

During the 28-month period from the date of the incident until his arrest, defendant lived at three separate addresses in Queens County. On November 18, 1989, defendant lived on 35th Avenue in Long Island City, a residence he had occupied since 1985. This is the address to which Stringfellows mailed his 1989 W-2 statement, and is also the address listed on defendant’s Federal tax return for 1989. In the second week of January 1990, defendant moved to 27th Street, also in Long Island City, where he resided with a friend in whose name the telephone was listed. Finally, on April 30, 1990, defendant moved to his current address on 44th Street.[3] During 1990 defendant had a telephone listed to him at that address under the same variation of his name listed on his Stringfellows employment application, as shown in defendant’s exhibit D.
*93 CONCLUSION OF LAW
The analysis here must begin with CPL 30.10 (4) (a) which defines the law governing this motion:
“In calculating the time limitation applicable to commencement of a criminal action, the following periods shall not be included:
"(a) Any period following the commission of the offense during which * * * (ii) the whereabouts of the defendant were continuously unknown and continuously unascertainable by the exercise of reasonable diligence.”
Thus, in resolving this motion, two core questions must be answered regarding the 28-month interval from November 16, 1989 to March 25, 1992 when defendant was arrested: (1) were the whereabouts of defendant continuously unknown? and (2) were they continuously unascertainable by the exercise of reasonable diligence?
A motion to dismiss an information as untimely is an appropriate pretrial application under CPL 170.30 (1) (d). When confronted with such a challenge, the People must prove beyond a reasonable doubt that the Statute of Limitations was tolled. (People v Kohut, 30 NY2d 183, 188 [1972].)
The People have not sustained their burden.
Although this court credits the good-faith efforts undertaken by the complainant to locate defendant, it must be recalled that he is neither a trained investigator nor a State agent. Since a criminal prosecution is brought by the People of the State of New York, it is the government which is responsible for meeting the reasonable diligence obligation imposed by CPL 30.10 (4) (a).
Thus, it is the absence of any effort by the New York City Police Department, the State agent involved in this case, that is dispositive of this motion. While Mr. Ryan furnished the police with a fresh complaint, and provided them with prompt supplemental leads which may have been productively pursued, nothing was done with that information. That defendant was eventually located 28 months after the fact is attributable to nothing done by the police; rather, it is due to the fact that Mr. Ryan found himself by chance in the Brooklyn DMV office when defendant was present.
As defense exhibits A and B plainly show, Stringfellows evidently had no difficulty forwarding to defendant his W-2 statement for 1989. Moreover, as defendant’s timely filed 1989 *94 income tax return demonstrates, that statement reached defendant in time for him to include it as part of that return.
This is not a case where police efforts to find a defendant simply did not pass muster. (Cf., People v Landy, 125 AD2d 703 [2d Dept 1986] [police efforts to locate defendant over a six-month period consisting of two visits to places believed to be defendant’s residence, telephone calls to his mother and former employees, attempts to determine defendant’s address via the post office and a search for any licenses issued to defendant held to be minimal and insufficiently diligent to toll the Statute of Limitations under CPL 30.10 (4) (a) (ii)].) By any standard, the efforts to locate defendant in Landy were plenteous in comparison to the police inertia at bar.
In short, the conclusion cannot be fairly drawn on this record that even a minimal investigation by the police would not have located defendant before the expiration of the 24-month Statute of Limitations governing this case. It follows, therefore, that the absence of effort by the State requires a negative answer to the central inquiry of whether the People have proven beyond reasonable doubt, as they must, that the whereabouts of defendant were continuously unascertainable by the exercise of reasonable diligence during that period, so as to invoke the exception provided by CPL 30.10 (4) (a) (ii).
Accordingly, the motion pursuant to CPL 30.10 (2) (c) to dismiss this prosecution as untimely brought must be granted.

. Complainant’s effort to produce defendant’s original employment application at the hearing on this motion was stymied by the fact that the records of Stringfellows were disposed of after its entry into bankruptcy. The club has since reopened under new management.

. It is noteworthy that defendant’s testimony at the hearing concerning his residences stands in direct contrast to the content of his counsel’s "Memorandum in Rebuttal” dated July 24, 1992. In that document, counsel represented that the statements therein were made "as a result of my conversations with witnesses, inquiries, and information from the defendant”.
In relevant part, the "memorandum” makes three key assertions: first, that while working at Stringfellows, defendant shared a room with a coworker, not identified, at 27-27 21st Avenue, in Astoria, Queens; second, that defendant continued to live there for approximately six months after leaving Stringfellows; third, that "[i]t would be difficult not to locate [defendant] as his name appears in the Queens telephone book (exhibit 1) together with his current address (where he has lived for approximately two years).” The item identified as exhibit 1 is a copy of page 80 of the Queens telephone directory, year unspecified, which contains an entry purporting to be for defendant at an address in Astoria.
The "memorandum”, which is neither an affirmation or affidavit, continued with the statement that "[defendant’s] whereabouts were easily ascertainable during the twenty-eight months from the time of the alleged offense”.
Defendant’s hearing testimony, however, disavowed virtually every representation in counsel’s memorandum. In a detailed, oft-repeated account of his residences, defendant adhered to his contention that while employed at Stringfellows he resided at 35th Avenue in Long Island City, not on 21st Avenue, in Astoria; that he never lived at the Astoria address cited by counsel and he had never told her that he had lived there; that the person listed in counsel’s "exhibit 1” is not he; and that he had the three above-described residences in the 28-month interval from the event at issue until his arrest, and not the one address so unequivocally asserted by counsel.
Counsel later withdrew her contention that defendant was listed in any phone directory during the period in question.