Filed 7/31/13  P. v. Torres CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>     Plaintiff and Respondent,<br><br>v.<br><br>GERARDO TORRES,<br><br>     Defendant and Appellant. | B240275<br><br>(Los Angeles County<br>Super. Ct. No. MA054083) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Tomson Ong, Judge.  Convictions affirmed in part, reversed in part, sentence modified in part.

Joy A. Maulitz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Paul M. Roadarmel, Jr. and Seth P. McCutcheon, Deputy Attorneys General, for Plaintiff and Respondent.

_____

A jury convicted Gerardo Torres of two counts of assault with a deadly weapon, one count of felony vandalism, driving under the influence and driving with a blood alcohol level of 0.08 or greater and three counts of driving with a suspended license. The court sentenced Torres to an aggregate term of 10 years 2 months.

Torres does not challenge his assault convictions. The Attorney General agrees that one of the suspended license convictions must be reversed for insufficient evidence, the punishment for the conviction of driving under the influence must be stayed, and the one-year deadly weapon enhancement imposed on the vandalism conviction should be reduced to four months.[1] We agree.

The parties' concessions leave just two questions for us to answer: Should one of the remaining suspended license convictions also be reversed for insufficient evidence? Should the sentence on the vandalism conviction be stayed under Penal Code section 654 because it is based on the same conduct that was punished as assault with a deadly weapon? We answer yes to both questions.

## FACTS AND PROCEEDINGS BELOW

In September 2011, Danny Casillas was sitting on his front porch when Torres drove slowly down the street, made a U-turn and parked his car on the sidewalk next to Casillas's driveway. Torres got out of his car and walked toward Casillas saying: "I'm here to kick your ass and kill you." When Casillas asked Torres who he was and who sent him, Torres ignored the questions. Instead, Torres took off his shirt and told Casillas: "Come on, I'm ready." Torres's hands were balled into fists.

At that point, Casillas's wife, Maria, came out on the porch and tried to pull Casillas back into the house. She told Casillas not to fight the stranger because he was "too crazy" and probably had a knife or some other weapon "to kill you." Casillas

---

[1]    The Attorney General also identifies errors in assessing fines and fees and in calculating Torres's presentence conduct credits. We will direct the court to amend the judgment and the abstract of judgment.

went back into the house and told his daughter to call 911. While she was doing that, Torres called out: "Okay, I'll be back tonight and drop by and kill you and your family."

As Casillas and his wife watched from their front porch, Torres got into his car, made "a quick U-turn" and "floor[ed] it" as he drove up the Casillas's driveway and smashed his car into the back of Casillas's truck. The force of the crash pushed Casillas's truck toward the porch where Casillas and his wife were standing. The truck swerved away from the porch, however, and hit the corner of the garage. Casillas testified that if the truck had not hit the corner of the garage "it could have killed me and my wife."

After smashing into the rear of Casillas's truck, Torres's car bounced or rolled back into the street. Torres tried to start the car. When it wouldn't start, he left the premises on foot, chased by Casillas's neighbors. Sheriff's deputies apprehended Torres soon afterward. His blood alcohol level was between 0.16 and 0.17.

## DISCUSSION

### I. TORRES COMMITTED ONE OFFENSE OF DRIVING WITH A SUSPENDED LICENSE.

Counts 8 and 9 charged Torres in identical language with driving on a suspended license in violation of Vehicle Code section 14601, subdivision (a), which states in relevant part: "No person shall drive a motor vehicle at any time when that person's driving privilege is suspended or revoked [for driving under the influence] if the person so driving has knowledge of the suspension or revocation." The jury found Torres guilty of both counts and the court imposed two consecutive one-year sentences.[2]

Torres argues that he cannot be convicted of both counts because each count was predicated on the same indivisible act—driving with a suspended license, a continuing crime.

---

[2]     The jury also convicted Torres of driving while his license was suspended for failure to appear at a prior proceeding. (Veh. Code, § 14601.1, subd. (a).) The Attorney General concedes Torres's conviction on that count must be reversed because there was no evidence Torres's license was suspended for failure to appear.

3

In support of his argument, Torres cites the opinion in *People v. Djekich* (1991) 229 Cal.App.3d 1213. The issue before the court was whether a property owner could be fined for each day that his property remained in violation of the city zoning laws or whether he was subject to just a single fine because his offenses were committed during an indivisible course of conduct having a single objective. The court began its analysis by observing that "[a]bsent *express legislative direction to the contrary*, where the commission of a crime involves continuous conduct which may range over a substantial length of time and defendant conducts himself in such a fashion with but a single intent and objective, that defendant can be *convicted* of only a single offense."[3] (*Id*. at p. 1221; italics added.) Thus, in the court's view, it is up to the legislative body to decide when to sever an otherwise continuous course of criminal conduct and permit an accumulation of convictions. Prosecutors are not allowed to usurp this power "'by the simple expedient of dividing a single crime into a series of temporal or spatial units.'" (*Id*. at pp. 1223-1224.)[4]

---

[3] This rule did not benefit Djekich because the court found the city had enacted an "express legislative direction to the contrary." (*Id*. at p. 1221.)

[4] The rule expressed in *Djekich* has its roots in a mid-18th Century opinion by Lord Mansfield, *Crepps* v. *Durden* (K.B. 1777) 98 Eng. Rep. 1283. In *Crepps*, a statute provided that no tradesman shall do any "worldly business" on a Sunday. Crepps, a baker, was convicted of four counts of violating this statute by selling four hot loaves of bread on the same Sunday. He was fined five shillings for each conviction. In reversing three of Crepps's four convictions, Lord Mansfield reasoned: "On the construction of the act of parliament, the offence is, 'exercising his ordinary trade upon the Lord's day;' and that, without any fractions of a day, hours, or minutes. It is but one entire offence, whether longer or shorter in point of duration; so, whether it consists of one, or of a number of particular acts. The penalty incurred by this offence is five shillings. There is no idea conveyed by the act itself, that, if a tailor sews on the Lord's day, every stitch he takes is a separate offence; or, if a shoemaker or carpenter work for different customers at different times on the same Sunday, that those are so many separate and distinct offences. There can be but one entire offence on one and the same day[.] . . . Here, repeated offences are not the object which the legislature had in view in making the statute: But singly, to punish a man for exercising his ordinary trade and calling on a Sunday." (*Id*. at p. 1287, italics omitted, spelling modernized.)

4

In the case before us, Torres reasons, there was only one license suspension period therefore driving during that suspension period constituted a single offense regardless of how many individual episodes of driving took place within the period.

Torres's reasoning would allow a driver to buy his way out of a suspended license by paying a fine the first time he is caught and then driving with impunity for the rest of the suspension period.[5] On the other hand, the People's position that Torres's actions constitute two distinct violations would create an equal or greater injustice. For example, the People's logic would result in an unjust sentence of five years in jail for someone whose license is suspended who, within the space of an hour or so, drove to the grocery store to buy fruit and vegetables, then to the bakery for bread, to a drug store for medicine, picked up her mother, and then drove home.

We need not adopt so broad a rule as Torres suggests in order to agree that the facts of this case allow of only one offense of driving with a suspended license. In *People v. Knight* (1939) 35 Cal.App.2d 472, the defendant drove up to a service station, stopped and tried to buy gas. Observing defendant's intoxicated condition, the attendant refused to sell him any. Defendant then drove away but was seen a few minutes later by a police officer who took him into custody. "These facts," the court stated, "do not reveal more than a continuing offense of driving while intoxicated." (*Id*. at p. 474.) We follow the *Knight* case. Like that case, although Torres stopped the car, the stop was brief. Further the entire observed act of driving spanned only a matter of minutes.

We need not decide here whether multiple violations might occur in other circumstances. Under the facts of this case, Torres could be convicted of only one count of driving with a suspended license.

---

[5] Lord Mansfield was probably not concerned that his opinion would turn Crepps into a scoff-law. In mid-18th Century England, Crepps would have had to sell a lot more than four loaves of bread to off-set a five schilling fine.

## II. THE SENTENCE ON THE VANDALISM CONVICTION MUST BE STAYED.

Penal Code section 654, subdivision (a) states in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment, but in no case shall the act or omission be punished under more than one provision."

Here, Torres's act of smashing his car into the rear of the Casillas's truck is "a single physical act that violates different provisions of law" (*People v. Jones* (2012) 54 Cal.4th 350, 358) and is "punishable . . . by different provisions of law" as an assault with a deadly weapon and as vandalism. Thus, it falls squarely within the provisions of section 654 and the longest potential punishment (for assault with a deadly weapon) prevails. (Compare Pen. Code, § 245, subd. (a) with § 1170, subd. (h)(1).) (*People v. Correa* (2012) 54 Cal.4th 331, 337, omitting italics.)

The People submit that Torres may be punished for assault and vandalism because the trial court could reasonably conclude that he had two separate objectives when he drove up the Casillas's driveway—to commit violent injuries on the Casillases (Pen. Code, § 240) and to damage their truck (Pen. Code, § 594, subd. (a)(2)). However, in *People v. Jones*, *supra,* our Supreme Court held that the "'intent and objective'" test[6] does not apply when the case "involves a single act or omission." (*People v. Jones*, *supra*, at p. 360 and see the court's discussion, *id.* at pp. 359-360.)

Because driving up the Casillas's driveway constituted a single act, the lesser punishment for vandalism must be stayed.

---

[6] See *Neal v. State of California* (1960) 55 Cal.2d 11, 19.

6

### III. TORRES'S SENTENCE AND THE ABSTRACT OF JUDGMENT MUST BE MODIFIED IN ADDITIONAL WAYS.

#### A. Custody Credits

The court awarded Torres presentence custody credits consisting of 180 actual days and 27 good conduct days. This calculation is incorrect. Torres is entitled to 186 actual days and 93 good conduct days.

#### B. Court Security Assessment

The court imposed a $40 court security assessment pursuant to Penal Code section 1465.8, subd. (a)(1). This assessment does not appear on the abstract of judgment. We will order the abstract of judgment amended to reflect this assessment.

### DISPOSITION

The conviction under Count 9 for driving with a suspended license under Vehicle Code section 14601.2, subdivision (a) and the conviction under Count 10 for driving with a suspended license under Vehicle Code section 14601.1, subdivision (a) are reversed.

The sentence under Count 6 for driving under the influence of drugs or alcohol under Vehicle Code section 23152, subdivision (b) and the sentence under Count 11 for vandalism under Penal Code section 594, subdivision (a) are stayed.

The sentence enhancement under Count 11 for use of a deadly weapon under Penal Code section 12022, subdivision (b)(1) is reduced from one year to four months.

The sentence is modified to award Torres 186 actual days of presentence credit and 93 days of good conduct credit.

In all other respects the judgment is affirmed.

7

The court is directed to prepare an amended abstract of judgment and forward it to the Department of Corrections and Rehabilitation. The amended abstract of judgment shall reflect the imposition of a $40 court security assessment.

<u>NOT TO BE PUBLISHED</u>.


                      ROTHSCHILD, J.

We concur:


MALLANO, P. J.


CHANEY, J.

8