Rose Susan Malmud, as Beneficiary of the Trust Estate Created by the Last Will and Testament of Nathan Malmud, Deceased, Individually and for the Benefit of All Others Similarly Situated, Respondent, *v.* Lillian Blackman and Benjamin Blackman, Appellants, Impleaded with Annie Malmud, Individually and as Executrix, etc., of Nathan Malmud, Deceased, and Others, Respondents.

Second Department, May 7, 1937.

*Herman S. Bachrach* [*Clarence G. Bachrach* with him on the brief], for the appellants.

*Morris L. Levine*, for the respondents.

CLOSE, J.   On April 8, 1927, Annie Malmud, as trustee of the trust created under the will of her husband, Nathan Malmud, deceased, accepted from defendants Blackman a usurious obligation.   The obligation was in the form of a collateral agreement to pay to the trustee the sum of $25,000 in consideration of the trustee's changing the terms and extending the time of payment of a mortgage on which the balance due was approximately $22,000.   The trustee, who was not limited to legals, acquired the mortgage upon the payment of this sum and at the same time accepted this collateral usurious obligation.   By reason of a default in the mortgage the trustee brought an action to foreclose it and also asked for a deficiency judgment against the Blackmans, based on their collateral obligation.   Defendants pleaded usury.   This defense was overruled and judgment of foreclosure and sale entered.   The property was bought in by the trustee and the beneficiaries of the trust in the name of a corporation, and a deficiency judgment of $12,778.68 was entered against the Blackmans.   This court reversed the judgment and granted a new trial.   (232 App. Div. 765, 782.)   Upon the second trial the defense of usury was sustained and the complaint as to the Blackmans dismissed, and the judgment was affirmed.   (235 App. Div. 871.)

Thereupon plaintiff, a beneficiary of the trust, on behalf of herself and others, instituted this action against the Blackmans, the trustee and others who participated in the original transaction, seeking to hold the Blackmans liable for the amount of the deficiency judgment less the amount of the usury, or, in the alternative, to have the trust placed in *statu quo* by conveying the property to the Blackmans upon the payment to the trust of all the sums paid and the expenses incurred.   The basis of the complaint is that the usurious agreement was illegal and constituted a breach of the trust and that the Blackmans are liable because they were parties to the agreement and participated in the transaction with knowledge that it constituted a breach of the trust.   The Special Term granted the relief prayed for in the complaint.

Usurious contracts are void.   (General Business Law, § 373.)   Usury laws are for the protection of the borrower, because the power of the lender to relieve the borrower's needs creates the

opportunity for oppression. (27 R. C. L. 203.) But this action is not brought to enforce the usurious agreement. Its purpose is to compel restitution of the loss sustained by the illegal conduct of the trustee and the borrowers, whereby the trust estate has been despoiled. Every one actively concerned in such a transaction must answer for the loss to the trust estate. The borrowers knew they were dealing with a trustee. They knew also that they possessed the power to prevent, by a plea of usury, the trustee from realizing upon the security pledged. With this knowledge, they proceeded to accept the illegal loan, with a resulting loss to the trust estate and a resulting wrong to the innocent beneficiaries, at least two of whom had no knowledge of the usury. Thereby, the borrowers became liable to the beneficiaries of the trust. (Restatement, Trusts, §§ 288–294.) They were parties to a conversion. (*National Surety Co.* v. *Manhattan Mortgage Co.*, 185 App. Div. 733; affd., 230 N. Y. 545.)

To hold the borrowers liable, under such circumstances, for the loss sustained by the trust estate does not pervert the usury statutes by protecting the lender at the borrower's expense. The result reached in this case merely prohibits the borrower from committing a greater wrong than usury. Usury is not wrongful in itself. It is merely *malum prohibitum*. (*Rosa* v. *Butterfield*, 33 N. Y. 665.) The borrowers were parties to the diversion of a trust fund, so as between a loss to the beneficiaries of the trust, who knew nothing of the transaction, and a gain to the borrowers under the usury law, the former represents a superior equity.

A close analogy is to be found in those cases in which it has been held that where the usurious contract is induced by false representations by the borrower, he will be held estopped from defending on the ground of usury. (*Miller* v. *Zeimer*, 111 N. Y. 441.) Of course in no case may the illegal premium be recovered, and the relief afforded goes no further than to restore the *status quo*. That is all the plaintiff seeks here.

The judgment should be modified so that the innocent beneficiaries will be protected and, at the same time, the guilty beneficiary prevented from benefiting. This can be done by having the principal of the trust estate made whole and by giving to the defendants-appellants, during the lifetime of the trustee-beneficiary, the income of that part of the fund they are compelled to replace. The trustee-beneficiary is entitled to the income from the trust estate during her life. Therefore, she would presently benefit by any interest allowed. The judgment should be modified by reducing to $9,778.68, the amount to be recovered upon the deficiency after the foreclosure sale, by providing that the income

from such amount shall be paid over to the defendants-appellants or their nominee annually by the trustee during her life, and by further providing that upon the election of the beneficiaries to convey to the defendants-appellants the fee to the foreclosed premises upon payment to the said trust estate of the sum of $15,200 without interest and upon receipt of said amount by the trustee, she shall pay the income therefrom annually to the defendants-appellants, or their nominee, during the life of such trustee. As so modified, the judgment should be affirmed, without costs.

LAZANSKY, P. J., and ADEL, J., concur; JOHNSTON, J., with whom TAYLOR, J., concurs, dissents and writes for reversal and a dismissal of the complaint.

JOHNSTON, J. (dissenting). I dissent. The Blackmans were the owners of property incumbered by a first mortgage of $59,500 and by a second mortgage of $50,000 which had been reduced to $31,100. They desired to refinance the second mortgage, which the mortgagees were willing to sell for $30,000. The Blackmans consulted their attorney, Reswick, who was also attorney for the trustee, who had funds available for investment. Reswick represented both the Blackmans and the trustee in the subsequent transactions. The negotiations culminated on April 8, 1927, in the Blackmans' giving Reswick $8,000 and the trustee giving him $22,000, which sums Reswick paid to the mortgagees, who assigned the bond and mortgage to the trustee. The result of the transaction was that the Blackmans saved $1,100 by the payment of $8,000, thereby reducing the mortgage to $22,000. On the same day the trustee and the Blackmans made an agreement which recites that the trustee is the holder of the bond — secured by the second mortgage — upon which there is due $25,000, with interest, and that she agrees to extend the date of payment to April 10, 1930. The effect of this agreement was that the trustee, for a $22,000 investment, obtained a $25,000 collateral obligation in addition to the original bond and mortgage. The Blackmans paid the interest as well as $4,500 on account of the principal, but upon their subsequent default the trustee, in May, 1930, instituted an action to foreclose the mortgage and sought a deficiency judgment against the Blackmans. The fate of that action is described in the prevailing opinion. It is not disputed that the trustee, who was also the life beneficiary under the trust, was authorized to invest in the second mortgage and that it was a valid lien. This court has held that the collateral agreement by which the Blackmans agreed to pay the trustee $25,000 for the $22,000 investment was usurious and void, and the Blackmans were not liable for any deficiency

judgment. It must be admitted that the Blackmans knew that the $22,000 invested were trust funds.

The learned Special Term found that the remaindermen did not know of the usurious collateral agreement executed by their mother, the trustee. I cannot credit the testimony upon which that finding is predicated. Respondents contend that while the trustee was charged with constructive notice of the investment out of which the collateral agreement grew, neither the trustee nor the remaindermen had actual notice of it. If this be so, then it must be assumed that Reswick negotiated and consummated the transaction without consulting any representative of the estate. This is not only incredible but contrary to the proof. Helen testified that her mother was in Chicago and her sister Rose in Europe when the negotiations were had and the transactions closed. Helen admits, however, that it was she with whom Reswick first discussed the investment of the trust funds and it was she who delivered to him the trustee's checks totaling $22,000. In the light of this testimony it is difficult to believe Helen had no knowledge of the transaction. Neither the trustee nor Reswick was a witness at the trial. Moreover, respondents in their brief admit that although the action is brought in the name of the remaindermen it is, in fact, a suit by the estate. But in any event, whether the remaindermen did or did not have knowledge of the transaction, the Blackmans, in my opinion, are not liable for the loss resulting from the trustee's breach of the trust.

While the principle is well settled that any one who knowingly participates or aids in committing a breach of trust is responsible for the wrong and liable to the *cestui que trust* for the loss sustained, that principle may not and should not be invoked here. The $22,000 was paid by the trustee, not to the Blackmans, but to the mortgagees. Nevertheless, the payment was for the benefit of the Blackmans and they are in the position of borrowers. The usury statutes are intended for the protection of the borrower. The penalties imposed by the statutes are visited upon the lender. The agreement to pay more than the legal rate is not wrong. The only wrong under the statutes is the receipt of the excess over the legal rate or the acceptance of the obligation to pay such excess. The only wrongdoer is the lender. The borrower is neither in *pari delicto* nor *particeps criminis*. Therefore, when the Blackmans agreed to pay usury they did no wrong. The only wrong was the trustee's acceptance of the usurious obligation. That is the wrong denounced by the statutes, and concededly it constitutes a breach of trust. In other words, without usury there could be no breach. The wrong and the breach are inseparable. They both grow out

of the violation of the usury statutes. Therefore, in the instant case, the only wrongdoer was the trustee. To hold otherwise, in my opinion, evades and defeats the purpose of the usury statutes, which are intended for the protection and benefit of the borrower.

The vigilance of the courts in preventing evasion of the usury statutes is well illustrated in *Miller* v. *Zeimer* (111 N. Y. 441), cited in the prevailing opinion. There a bond and a mortgage for $15,000 were sold to plaintiffs' testator for $13,600, with a representation on the part of the mortgagor and mortgagee that they were valid, given for full consideration and free from usury. In fact, the bond and mortgage had been executed without consideration for the express purpose of being sold at a discount to a third party. In an action by the testator to foreclose the mortgage it was held that the mortgage, not having had a valid inception until purchased by the testator, was void. However, because of the misrepresentation inducing its purchase, the testator was allowed to enforce it to the extent of indemnifying him for the money actually advanced. The judgment decreed that the land should be sold to satisfy the sum advanced on the purchase of the mortgage, excluding any allowance for the usurious excess, thereby depriving the transferee of the benefit of his bargain to that extent. Thereafter the testator's executors brought an action for fraud and deceit against the mortgagor and mortgagee to recover the $1,400 which the testator lost, plus interest and counsel fees in the foreclosure of the mortgage. It was held that such an action would not lie because it was against the policy of the law to permit a lender to obtain indirectly the benefit of a usurious contract in violation of the statutes.

The *Miller* case definitely shows that the purpose of the usury statutes is to render a usurious obligation void and unenforcible, and that the court, under all circumstances and in any form of action, will strive to prevent a recovery based upon such an obligation. The court will depart from this policy where the lender was induced by misrepresentation to make the loan, and in that event he will be allowed to recover, not the full amount of the security, but only the amount actually advanced. In other words, because of the fraud the court will direct restitution to the lender of the amount paid by him. But only under such circumstances will the court permit the lender or those who succeed to his rights to be placed in *statu quo*.

In the case at bar it is not claimed that the trustee was misled or induced to accept the usurious obligation by reason of any deceit or fraud practiced by the Blackmans.

Even assuming the remaindermen had no knowledge of the usurious collateral obligation, their recourse is against the trustee,

their mother, the only wrongdoer in the transaction. They should not now be permitted to recover against the Blackmans for the wrong committed solely by the trustee, particularly since in an action on the contract this court has held that by reason of this wrong she was not entitled to recover against the Blackmans.

The judgment should be reversed and the complaint dismissed, with costs.

TAYLOR, J., concurs.

Judgment modified by reducing to $9,778.68, the amount to be recovered upon the deficiency after the foreclosure sale, by providing that the income from such amount be paid over annually to appellants, or their nominee, by the trustee during her life, and by further providing that upon the election of the beneficiaries to convey to appellants the fee to the foreclosed premises upon payment to the said trust estate of the sum of $15,200, without interest, and upon receipt of said amount by the trustee, she shall pay the income therefrom annually to appellants, or their nominee, during her life. As so modified, the judgment is affirmed, without costs. Findings of fact and conclusions of law to the contrary are reversed and new findings and conclusions will be made.

Settle order on notice.