OPINION OF THE COURT
Edward M. Rappaport, J.
Is criminal usury in the second degree a continuous crime?[1] Is each payment of interest a separate and distinct illegal act?
Defendant moves to dismiss the indictment on the ground that the indictment is vague and duplicitous.
*12 The indictment, as is relevant to this motion, reads as follows:
"count one
"The Grand Jury of the County of Kings, by this indictment, accuse the defendants, Victor Iadarola, Benito Iadarola and Bernard Brown, of the crime of Criminal Usury in the First Degree (Penal Law § 190.42) committed as follows:
"The defendants, on or about and between 1987 and 1989, in the County of Kings, acting in concert with each other, not authorized or permitted by law to do so, knowingly charged, took and received money or other property from witness #1, known to the Grand Jury, as interest on a loan of $3,000.00 at a rate exceeding twenty-five per centum per annum or the equivalent rate of a longer or shorter period, and the defendants’ conduct was part of a scheme or business of making or collecting usury loans.
"count two
"The Grand Jury of the County of Kings, by this indictment, accuse the defendants, Victor Iadarola and Benito Iadarola and Bernard Brown, of the crime of Grand Larceny in the Second Degree (Penal Law § 155.40 [2]) committed as follows:
"The defendants, on or about and between 1987 and 1989, in the County of Kings, acting in concert with each other, stole certain property, namely, quantity of U.S. currency, by means of extortion from witness #1, known to the Grand Jury, in that the defendants, instilled a fear in witness #1, known to the Grand Jury, in that the defendants would cause physical injury to witness #1 in the future.”
In response to this motion, the People have supplied the following particulars (People v Iannone, 45 NY2d 589; see also, People v Keindl, 68 NY2d 410):
"2, 4, 6-9, 11-13. In 1987 the victim, an area business owner, sought a loan of three thousand dollars. The victim was informed by Bernard Brown that Victor Iadarola was in the business of making loans to people. The victim was introduced to Victor Iadarola through Bernard Brown. The victim obtained the loan in the form of cash from Victor Iadarola. At *13 the time the victim was unaware that the weekly payments were not being credited to a reduction of the principle [sic],
"After having made payments for totalling [sic] approximately two thousand dollars the victim was informed by Victor Iadarola that the victim still owed Victor the original three thousand dollars. Victor Iadarola also informed the victim that he, Victor Iadarola, now had an interest in the victim’s business as collateral for the loan and that the loan should be repaid in installments of one hundred and fifty per week. During the period of repayment the weekly loan payments were collected by Bernard Brown, Benito Iadarola, and Victor Iadarola.
"On several occasions the victim fell behind in his payments. On one occasion, Victor Iadarola informed the victim that the victim’s legs would be broken if he did not make his back payments. On another occasion when the victim had fallen behind in the payments, Victor Iadarola asked the victim if the victim 'knew who he was dealing with’. Victor Iadarola frequently boasted that he was 'with the Mafia’ and cultivated that image in the community. He also told the victim that if the victim continued to be late in the payments the victim would be 'a dead man’.
"Ultimately after a period of approximately sixteen months the victim paid off his 'debt’ to the defendants by making a payment for back 'interest’ and a lump sum payment of three thousand dollars.
"Based upon a loan of three thousand dollars, the weekly payments of one hundred and dollars [sic] per week is the equivalent of an interest rate of five per cent per week, or 'five points’ in the vernacular of the street, which translates into an annual interest rate of two hundred and sixty per cent. That rate is well in excess of the legal interest rate of twenty-five per cent set forth in Penal Law § 190.42.”
The bill of particulars does not narrow the dates. At best, defendant knows that instead of the crime being committed at the beginning of 1987 and ending at the end of 1989, the crime was for an unspecified "sixteen month period”. It is noted that the bill of particulars does not indicate a "scheme” or "business”, but a single loan (see, n 1, supra; n 2, infra).
In deciding this motion, it is critical for the court to determine if the crimes of usury and grand larceny are continuous crimes or not. For the purposes of discussion, the court will concentrate on the crime of usury.
*14 Whether a crime is continuous or not affects many diverse aspects of criminal law, some of which are as follows:
1. Duplicitous — A count in an indictment can only charge a single crime. If the indictment charges in a count more than one crime, it is duplicitous and invalid (People v Keindl, 68 NY2d 410, supra). If a crime is continuous, then charging in a single count multiple acts which constitute the continuous crime is not duplicitous (People v Farson, 244 NY 413).
2. Due Process, Vagueness — An indictment must give sufficient notice so as to permit a defendant to prepare a defense. Where the time period is vague as to when the criminal act was committed, the due process notice requirement is violated (People v Morris, 61 NY2d 290). Where a crime is continuous, charging the entire period during which the crime was committed is not vague, but is specific (People v Young, 207 NY 522, 531-532; see also, People v Keindl, 68 NY2d 410, 421-422, supra).
3. Evidence of Uncharged Crimes — Evidence of an uncharged criminal act, when introduced solely for the purpose of proving criminal propensity, is prohibited by New York’s public policy (People v Molineux, 168 NY 264). Where a crime is continuous, acts not specified in the indictment but part of the continuous crime are not considered "uncharged crimes” for Molineux purposes (People v Curtis, 143 AD2d 1030, lv denied 73 NY2d 890).
4. Double Jeopardy — The Constitution prohibits more than one prosecution of a person for a single criminal act. If a crime is continuous, then only one trial is permitted for the several different acts constituting the crime (In re Snow, 120 US 274; Brown v Ohio, 432 US 161; Matter of Johnson v Morgenthau, 69 NY2d 148).
5. Sentencing — Closely related to double jeopardy is the concept of consecutive sentencing. A person can be sentenced only once for a single criminal act, regardless of the number of statutes violated by such criminal act. If a crime is continuous, then sentence on each act forming a part of the continuous crime must be concurrent (In re Snow, 120 US 274, supra; People v Sweeter, 125 AD2d 841, 842-843, lv denied 69 NY2d 750; see also, Sturgis v Spofford, 45 NY 446, 452-454).
6. Proof of Elements of Crime — Where a crime requires proof of a specific amount or sum, the People must prove that specified sum or amount beyond a reasonable doubt. If a crime is continuous, the element containing the specified amount or *15 sum may be proven by diverse acts committed at different times (People v Cox, 286 NY 137; People v Roth, 129 Misc 2d 381).
7. Statute of Limitations — The New York Legislature has, for most crimes, set forth a definite time period in which a criminal action must be commenced. If a crime is continuous, the required time begins with the last act of the continuous crime (People v Eastern Ambulance Serv., 106 AD2d 867, 868).
8. Fifth Amendment — Closely related to the Statute of Limitations is the ability to refuse to answer questions that may tend to incriminate oneself. If the Statute of Limitations has run there is no right to refuse to answer a question on the ground that it may tend to incriminate the individual (Mestichelli v Mestichelli, 44 Misc 2d 707, 709; Thomson v Thomson, NYU, May 11, 1981, at 15, col 1).
If a crime is continuous, then a person has a right to refuse to answer any question that may tend to incriminate the individual even though the act inquired about was committed at a time when the Statute of Limitations has ostensibly run (see dissent, Toussie v United States, 397 US 112, 133).
9. Ex Post Facto — The Constitution prohibits the States from declaring illegal acts which when committed were legal, to be illegal. If a crime is continuous, then acts which were legal when performed may be aggregated with acts which were illegal when performed to complete an element of the crime (People v Rosenberg, 93 Misc 2d 965; cf., People v Allen, 136 Misc 2d 963; see also, People v Martinez, 60 AD2d 551).
10. Venue — A person has a right to be tried in the county or place where the illegal activity was conducted or performed. If a crime is continuous, then any locale where any of the different acts were done can try the alleged perpetrator (United States v Cores, 356 US 405; Armour Packing Co. v United States, 209 US 56).
As can be seen, the determination of whether a crime is continuous or not is sometimes advantageous to a defendant and sometimes disadvantageous. In this case, if this court determines that criminal usury in the second degree is a noncontinuous crime, defendant’s motion is granted and the indictment is dismissed. On the other hand, the People can reindict him for each and every interest payment and, if found guilty, can be punished consecutively for each and every interest payment received.
Determining whether a crime is continuous is not an easy *16 task. Illustrative of the difficulty is a comparison of the dissent in People v Okafore (72 NY2d 81) with People v Reiser (240 App Div 36). The dissent in People v Okafore (supra, at 92-93) states: "Bigamy is a continuous course of conduct and unless interrupted is subject to a single prosecution.” In contrast, People v Reiser (supra, at 37) says: "Bigamy is not a continuing offense; the crime is committed the instant the second ceremonial marriage is consummated.” Is bigamy a continuous crime during which a person is in the state of marriage to two different individuals or is it complete when the second marriage is consummated? This is illustrative of the struggle courts have faced in making this determination.
Making the decision even more difficult is the fact that there appears to be three separate categories of crimes.
The first category is those crimes which are, as a matter of law, always continuous. These crimes have an element which by their very nature require a course of conduct or several acts or omissions over a period of time. Remaining in the United States illegally (United States v Cores, 356 US 405, supra), possessing a weapon (Matter of Johnson v Morgenthau, 69 NY2d 148, supra) or cohabiting with multiple females (In re Snow, 120 US 274, supra) are examples.
The second category is crimes which are, as a matter of law, noncontinuous. These crimes have an element which by their nature are complete upon a single act or omission. Examples of these are: making book (People v Erickson, 302 NY 461), sex crimes (People v Keindl, 68 NY2d 410, supra), failing to register upon reaching a specified age (Toussie v United States, 397 US 112, supra), bail jumping (People v Landy, 125 AD2d 703, lv denied 69 NY2d 882) and drug sales (Blockburger v United States, 284 US 299).
The third category is a hybrid. The crimes are sometimes continuous and sometimes not continuous. These crimes have an element that sometimes can be committed by a single act or omission or by several different acts or omissions over a period of time. Some examples are: endangering the welfare of a minor (People v Keindl, 68 NY2d 410, 421, supra), assault (People v Afarian, 202 Misc 199), and larceny (People v Cox, 286 NY 137, supra).
In determining into which category a crime falls, an examination is necessary of legislative intent (People v Okafore, 72 NY2d 81, 86, supra; Matter of Johnson v Morgenthau, 69 NY2d 148, 152, supra; People v Sher, 149 Misc 2d 194, 195) *17 and the nature of the crime (People v Keindl, supra, 68 NY2d, at 421; Cowley v People, 83 NY 464, 472; see also, Toussie v United States, supra, 397 US, at 115).
Usury statutes have existed in this country since colonial times (Curtiss v Teller, 157 App Div 804, 810, affd 217 NY 649). The purpose of the usury statute is "to protect desperately poor people from the consequences of their own desperation. Lawmaking authorities in almost all civilizations have recognized that the crush of financial burdens causes people to agree to almost any conditions of the lender and to consent to even the most improvident loans. Lenders, with the money, have all the leverage; borrowers, in dire need of money, have none” (Schneider v Phelps, 41 NY2d 238, 243; see also, Malmud v Blackmun, 251 App Div 192, 193-194; People v Ayers, 109 Misc 2d 870, 873; 72 NY Jur 2d, Interest and Usury, § 55, at 75-76).
New York had no effective criminal usury statute until 1965 (Hammelburger v Foursome Inn Corp., 54 NY2d 580, 589; see also, People v Fernandez, 93 Misc 2d 127, 129-130). While criminal usury statutes existed in the Banking Law and the General Obligations Law, they were ineffective because of their exceptions (Szerdahelyi v Harris, 67 NY2d 42, 49-50).
In 1965, sections 2401 and 2402 were added to the former Penal Law (L 1965, ch 328). This statute was incorporated into the current Penal Law as section 190.40. The impetus was that loan-sharking had "become a major source of revenue” (Mem of Admin, 1965 NY Legis Ann, ch 328, at 47). Legitimate businesses were being taken over by loan sharks, which existing laws could not prevent (id., at 47). It was found that "[t]he criminal loan-shark can, and generally does, conduct his business wholly within the law” (id., at 48; see also, Governor’s Mem approving L 1965, ch 328, 1965 NY Legis Ann, at 509-510). The legislative intent was to prevent this abuse of the usury statutes.
It is clear that the Legislature intended to stop the professional loan sharks from obtaining control of legitimate businesses and oppressing the poor (32 NY Jur 2d, Criminal Law, § 1052, at 695-696).
The oppression of the poor or the "taking over” of legitimate businesses can sometimes be accomplished by a single usurious transaction, or by a continuous usurious course of conduct. Nothing directly indicates whether the Legislature intended the crime to be continuous or not. The statute’s *18 motivation of preventing oppression of the poor and the taking over of legitimate businesses indicates the recognition that the evil prohibited is conduct which sometimes may stretch over an extended time period.
The nature of the crime must also be examined. Penal Law § 190.40 reads as follows: "A person is guilty of criminal usury in the second degree when, not being authorized or permitted by law to do so, he knowingly charges, takes or receives any money or other property as interest on the law or forbearance of any money or other property, at a rate exceeding twenty-five per centum per annum or the equivalent rate for a longer or shorter period.”[2]
The use of the words “per annum” or “for a longer or shorter period” indicates that criminal usury may extend over a period of time and thus be continuous. Further, “takes” and “receives” have been held sometimes to be a single act but sometimes to be continuous (People v Cox, 286 NY 137, supra).
On the other hand, the word "rate” indicates a single transaction, as does “charge”.
Also to be considered is that there is a presumption against declaring a statute continuous (Toussie v United States, supra, 397 US, at 135; People v Barnes, 130 Misc 2d 1058, 1060; People v Fletcher Gravel Co., 82 Misc 2d 22, 30; People v McAllister, 77 Misc 2d 142, 148).
Further, in civil usury cases each interest payment constitutes a separate and distinct cause of action (Robinson v Miller, 210 App Div 450, 455; 72 NY Jur 2d, Interest and Usury, § 156, at 184).
Weighing all these factors, the court concludes that given the legislative intent and purposes, and the nature of the crime as discussed above, criminal usury falls in the third category which is sometimes continuous and sometimes not continuous.
In determining whether a crime in an individual case is continuous, examination is had of whether there is unity of victim (People v Buckley, 75 NY2d 843; People v Perlstein, 97 AD2d 482); whether the acts were motivated by a single intent or scheme (People v Buckley, 75 NY2d 843, 846, supra; People v Stanley, 173 AD2d 658, 659; People v Gold Key Club, 2 Misc 2d 380, appeal dismissed 3 AD2d 740); whether the acts were *19 caused by a single or separate impulse (Blockburger v United States, supra, 284 US, at 302; People v Okafore, supra, 72 NY2d, at 87); whether there was a single purpose or objective in the commission of the acts (Blumenthal v United States, 332 US 539; Matter of Auer v Smith, 77 AD2d 172, appeal denied 52 NY2d 1070), and whether the acts were for personal gain (People v McAllister, supra, 77 Misc 2d, at 138).
In this case, the People allege a single loan, to a single individual, with a single purpose, constituting a single common scheme or plan, and for personal gain. These factors militate toward the conclusion that in this case each payment of interest be deemed part of a single continuous course of conduct. Indeed, in this case if each payment were considered separately, it would be impossible to establish that the rate exceeded the legal maximum. If a $150 payment of interest on a $3,000 loan is examined individually, it is impossible to find usury. If each payment over the 16-month time span is examined collectively, then it is clear that a crime was perpetrated.
The court finds that the period specified in the indictment, as amplified by the bill of particulars, complies with constitutional mandates and is not duplicitous (People v Young, supra, 207 NY, at 531-532 [where a similar time span in a criminal usury case was deemed not vague or duplicitous]).
The motion to dismiss Count 1 of the indictment is denied.
With regard to Count 2 of the indictment, grand larceny, this crime has already been deemed by the courts as sometimes continuous and sometimes not continuous (People v Cox, 286 NY 137, supra). Further, the involvement in this case with extortion, a crime which also is sometimes continuous and sometimes is not continuous (People v Fay, 184 Misc 684, 686; People v Parkinson, 43 NYS2d 690, 693), indicates that the allegations are sufficient.
The motion to dismiss Count 2 is denied.
The prosecutor is directed to particularize the approximate month in which the crime commenced, absent which the "16-month” period becomes incomprehensible. While not unconstitutional, it is too nonspecific.

. The court is discussing criminal usury in the second degree since defendant Brown is charged with only one loan. The other defendants have other usurious loans and therefore are appropriately charged with criminal *12 usury in the first degree. The only relevant charge as to this defendant is criminal usury in the second degree.

. The crime of criminal usury in the first degree requires proof of a "scheme” or "business” which requires multiple continuous acts.