OPINION OF THE COURT
Steven M. Statsinger, J.
Defendant, charged with failure to re-register as a gun offender, in violation of Administrative Code of the City of New York § 10-603 et seq., moves to dismiss the information as time-barred by the applicable two-year statute of limitations.[1] For the reasons discussed below, the court denies the motion to dismiss.
I. Factual Background
A. The Allegations
According to the accusatory instrument, on September 4, 2006, defendant was arrested in Kings County, and charged with, inter alla, criminal possession of a weapon in the third degree, in violation of Penal Law § 265.02 (4) (possession of “any loaded firearm”).[2] Defendant pleaded guilty to that charge on February 14, 2008, and on September 10, 2008, was sentenced to five years’ probation. That same day, he completed a New York City gun offender registration form, in which he listed a Brooklyn address. The form directed the defendant to appear in person at the NYPD’s gun offender monitoring unit (GOMU), which is located in Manhattan, within 48 hours; he did so, on September 12, 2008. Once there, defendant completed the relevant paper work, again listing a New York City address. The registration form instructed defendant to return to the Manhattan GOMU within 20 days of each six-month anniversary of his sentencing date for the next four years. Defendant never returned to the GOMU to re-register.
B. Legal Proceedings
On April 8, 2013, defendant was arrested and charged with failure to re-register as a gun offender, in violation of the Gun *1004 Offender Registration Act (GORA),[3] under Administrative Code of the City of New York § 10-603 (e) (1). He was arraigned on a misdemeanor information in New York County Criminal Court on April 9, 2013, and released on his own recognizance.
The “accusatory part” of the information (see CPL 100.15 [1], [2]) provides that “[o]n or about February 21, 2010,”[4] defendant failed to re-register as a gun offender, as required by GORA. The “factual part” (CPL 100.15 [1], [3]) of the information alleges that defendant “was released on probation on September 10, 2008,” and that he “initially registered at GOMU on September 12, 2008,” and provided a New York City address. However, according to the information, defendant failed to return to GOMU to personally re-register within the six-month time period required by GORA “or at any time thereafter.”
By a motion filed on June 25, 2013, defendant moves to dismiss the information as time-barred by the two-year statute of limitations that applies to misdemeanors. (See CPL 30.10 [2] [c].) According to defendant, his first re-registration date was to have been six months and 20 days from his initial registration, approximately March 30, 2009, and that his failure to re-register on that date marked the date of the commission of the offense. Thus, defendant argues, the People’s failure to charge him with a GORA violation by March 30, 2011 renders the prosecution time-barred.
The People, noting that there is no case law on this issue, argue in response that GORA makes out a continuing offense for purposes of the statute of limitations. The People agree that the offense commenced on March 30, 2009 but, under the People’s analysis, defendant’s failure to re-register by that date “marked the beginning of his commission of the crime of failure to re-register under Administrative Code § 10-603 (e), not the completion of the crime.” Under the People’s reasoning, defendant’s obligation to comply with GORA’s re-registration requirements lasted for four years from the date of conviction, or until approximately February 14, 2012, and thus the two-year limitations period started on that date. To the People, since defendant was charged within two years of February 14, 2012, the prosecution is timely.
*1005 II. Discussion
A. Introduction
This case presents a question of first impression: whether the failure to re-register as a gun offender, as required by GORA, is a continuing offense for statute of limitations purposes. Here, defendant is accused of failing to re-register within six months of his sentencing “or at any time thereafter.” After careful consideration, the court concludes that failure to re-register as a gun offender is indeed a continuing offense. The offense commences on the date that defendant first failed to comply with GORA and is completed, and the statute of limitations period begins to run, when (1) the defendant voluntarily complies, (2) is apprehended or (3), at the latest, upon the expiration of the four-year reporting period.
Here, the People do not allege that defendant voluntarily re-registered or was apprehended within the time period mandated by GORA. Since that four-year period expired on or about February 14, 2012, and this action was commenced within two years of that date, it is timely. The motion to dismiss is accordingly denied.
B. The Statute of Limitations
Failure to re-register as a gun offender is a misdemeanor, punishable by a fine of not more than $1,000, or imprisonment of not more than one year, or both. (Administrative Code § 10-608.) According to GPL 30.10 (2) (c) a “prosecution for a misdemeanor must be commenced within two years after the commission thereof.” The statute of limitations reflects the legislature’s judgment as to when a charge becomes too stale to prosecute based largely on three considerations: the defendant’s difficulty in mounting a defense when facts might have become obscured by the passage of time; the inadvisability of punishing offenders for ancient acts; and the need to encourage law enforcement to investigate criminal activity promptly. (See e.g. People v Seda, 93 NY2d 307, 311 [1999].) However, the limitations period can be either tolled or extended under certain defined circumstances, such as where the defendant is a public servant accused of official misconduct (limitations period extended by GPL 30.10 [3] [b]), or where the defendant is a fugitive (limitations period tolled by up to five years under GPL 30.10 [4] [a]), and, in some circumstances, for sex offenses. (CPL 30.10 [3] *1006 [f].)[5] Consistent with their legislative purpose, criminal statutes of limitations are to be “liberally construed in favor of the defendant”; that is, “in favor of repose.” (People v McAllister, 77 Misc 2d 142, 144 [Crim Ct, Kings County 1974].)
C. Continuing and Non-Continuing Offenses under New York Law
1. Introduction
Absent tolling, the limitations period begins with the commission of the crime and ends with the commencement of the action, which occurs when the accusatory instrument is filed in a criminal court. (CPL 1.20 [16] [a].) For most offenses, identifying the date of commission is straightforward; the offense is committed on the date of occurrence. Not every offense occurs on a single occasion, however; some are continuing offenses for purposes of the statute of limitations. For a continuing offense, the limitations period commences on the date of completion, not the date the offense began. (People v Eastern Ambulance Serv., 106 AD2d 867, 868 [4th Dept 1984].)
Where the language of the criminal statute does not clearly identify whether the offense is a continuing offense for limitations purposes, courts look to the intent of the legislature along with the nature of the act or acts proscribed. (People v Brown, 159 Misc 2d 11, 16-17 [Sup Ct, Kings County 1993].) There is, however, a presumption against continuing offenses. {Id. at 18.) An offense will only be deemed a continuing offense where the statute “unambiguously express [es] a legislative determination that the crime should be considered a continuing one.” (People v Landy, 125 AD2d 703, 704 [2d Dept 1986].)
Under these principles, New York courts have identified a number of continuing offenses, but usually for offenses that involve a continuing course of conduct. New York courts have also examined a small number of criminal offenses characterized by a failure to act. Those offenses have generally been found to be non-continuing offenses because the statute at issue proscribed a failure to act only on a single occasion. Finally, decisions from other jurisdictions on this same issue have generally held that offenses defined by a failure to act on a single occasion are not continuing offenses, while offenses defined by failure to comply with a regulatory scheme that requires repeated acts over a period of time are continuing offenses.
*1007 2. New York Offenses Involving a Continuing Course of Conduct
New York courts have consistently held that offenses that involve a course of conduct are continuing offenses for purposes of the statute of limitations. Thus, for example, Eastern Ambulance held that a criminal antitrust violation, charged under General Business Law §§ 340 and 341, was a “continuous crime” for statute of limitations purposes, and that the limitations period was “governed by the termination and not the starting date of the offense.” (Eastern Ambulance at 868.) Endangering the welfare of a child, under Penal Law § 260.10 (1), can also be a continuing offense. The limitations period “does not commence until after the last act of abuse occurs” (People v Bernardo, 84 AD3d 1717, 1718 [4th Dept 2011]), because the offense may be committed by either one act or multiple acts, and a defendant may be guilty of the offense by “virtue of a series of acts” that “when combined make out the crime.” (People v Keindl, 68 NY2d 410, 421 [1986].)
Hindering prosecution and tampering with physical evidence have also been characterized as continuing offenses. Under People v Randall-Whitaker (55 AD3d 931, 931 [2d Dept 2008]), the statute of limitations for those offenses does not begin to run “until the offenses ha[ye] terminated.” (See also People v DeBeer, 35 AD3d 1275, 1275 [4th Dept 2006].)
Usury is likewise a continuing offense (Brown, 159 Misc 2d at 19), at least where it was charged in a way that identified a single loan, to a single individual, where the offense would not be made out if each individual payment on the loan were examined individually. Scheme to defraud, under Penal Law § 190.65, is also a continuing offense because it “is generally not a crime that begins and ends of a certain day. It is often committed over an extensive period of time.” (People v Agha Hasan Abedi, 156 Misc 2d 904, 912 [Sup Ct, NY County 1993].) And concealment of a material fact, in violation of Social Services Law § 145, has been found to be a continuing offense, since the “very essence of concealment is continuity for the period required to accomplish the desired result” (People v Bellamy, 94 Misc 2d 1028, 1031 [Sup Ct, Suffolk County 1978]), which, in Bellamy, was to protect the proceeds of a personal injury suit from any claim or lien by the Department of Social Services. Similarly, a larceny alleged to have occurred through multiple acts of taking over a prolonged period is a continuing offense. (People v Schwenk, 92 Misc 2d 331, 339 [Suffolk County *1008 Ct 1977].) A criminal violation of a town zoning ordinance is likewise a continuing offense; it does not end with the completion of the non-conforming building (People v Fletcher Gravel Co., 82 Misc 2d 22, 31 [Onondaga County Ct 1975]).
Other continuing offenses marked by a course of conduct include making a false representation about a college degree, in violation of Education Law § 224 (3) (People v Kirk, 62 Misc 2d 1078, 1084-1085 [Rockland County Ct 1969]), and selling alcoholic beverages without a license (People v Gold Key Club, 2 Misc 2d 380, 383 [Ct Gen Sess, NY County 1956]). Finally, for conspiracy offenses, the limitations period begins to run after the last provable overt act is completed, even if that act is not charged in the indictment. (People v Leisner, 73 NY2d 140, 146 [1989]; People v Hines, 258 App Div 466, 468 [1st Dept 1940].)[6]
3. New York Offenses Involving a Failure to Act
In contrast to this rich trove of precedent, however, New York cases discussing offenses that are characterized by a failure to act are few and far between. One such case is People v Loremady Realty Corp. (188 Misc 944, 945-946 [Ct Spec Sess, 2d Dept 1947]). There, a landlord failed to file a rent registration form by December 15, 1943, as required by New York’s War Emergency Act. (Id.) The court concluded that the offense was not a continuing offense for limitations purposes. Rather, the statute of limitations began to run on the date the form was due, and did not extend to each day beyond that date that the landlord was in default, even though the landlord was charged with failing to file “on and after” that date. (Id.)
Bail jumping also represents a failure to act, since the crime occurs only after a defendant has failed to appear in court. The Appellate Division, Second Department, has held that bail jumping is not a continuing crime. (Landy, 125 AD2d at 704.) “The crime of bail jumping in the first degree is defined simply as the failure to appear in court on the required date or voluntarily within 30 days thereafter (Penal Law § 215.57). It becomes a completed crime when 30 days have expired after the failure to *1009 appear.” (Id.) The Appellate Division, First Department, apparently agrees. In People v Martinez (60 AD2d 551, 551 [1st Dept 1977]), the Court, considering an ex post facto claim, not a statute of limitations claim, held that the crime of bail jumping “is defined simply as nonappearance on a required date or within 30 days thereafter,” and does not continue beyond that date.
4. Out-of-State Cases
No New York case has examined an offense similar to failure to re-register under CORA; that is, an offense characterized by a failure to comply with a regular, periodic regulatory scheme. In the absence of any New York precedent, the People rely on out-of-state decisions that identify failure to register as a sex offender under a state’s sex offender registration act (SORA) as a continuing offense, arguing that SORA and GORA violations are similar. The People rely in particular on Lieble v State (933 So 2d 119, 120 [Fla Dist Ct App 2006]). There, the court construed a Florida statute requiring a sex offender to register within 48 hours after establishing a permanent or temporary residence in that state, and to re-register within 48 hours of any change of address. Defendant had obtained a Florida driver’s licence on January 10, 2002, and thus argued that the three-year statute of limitations began to run on January 13, 2002.[7] (Id. at 119.) Since he was not charged until April 23, 2005, more than three years later, he argued that the prosecution was time-barred. (Id. ) The court disagreed. Under Florida law, an offense is a continuing offense for statute of limitations purposes “if a legislative purpose to prohibit a continuing course of conduct plainly appears” in the statute. (Id. at 120, quoting Fla Stat § 775.15 [3].) The court found such a legislative purpose in: (1) “the express statutory language,” which “creates a continuing duty to register, which evinces an intent to treat failure to register as a continuing offense”; (2) “the Legislature's] [express recognition] that sex offenders present an ongoing danger to society”; (3) the fact that “failure to register meets the traditional definition of a continuing crime, which is commonly defined as an offense marked by a continuing duty in the defendant to do an act which he fails to do”; (4) the fact that “to hold otherwise would produce an absurd result not reasonably contemplated by the Legislature and one which [would] eviscerate [ ] the statute”; and (5) the fact that “making failure to register a continuing offense recognizes the fact that convicted sex offenders often *1010 have a transitory lifestyle or deliberately attempt to keep their movements secret and thus avoids the problem of proving when the offender moved.” (Id. at 121.) Lieble also notes that courts have reached the same conclusion in Alabama, Alaska, Arizona, California, and Colorado. (Id. at 120.) Accordingly, in Lieble, where the crime was charged as having occurred on the day defendant was apprehended, which was also the day his failure to register was discovered, the court found the prosecution to be timely. (Id. at 119.)
Federal courts have also considered whether criminal offenses involving a failure to act are continuing offenses, albeit with differing conclusions. A violation of the Federal Sex Offender Registration Notification Act (42 USC § 16901 et seq.; 18 USC § 2250) is a continuing offense; it commences when the defendant first fails to register and continues until the defendant is either arrested or registers. (United States v Pietrantonio, 637 F3d 865, 870 [8th Cir 2011]; United States v Dixon, 551 F3d 578, 582 [7th Cir 2008] [“The Act creates a continuing offense in the sense of an offense that can be committed over a length of time. If the convicted sex offender does not register by the end of the third day after he changes his residence, he has violated the Act, and the violation continues until he does register, just as a prisoner given a two-week furlough is guilty of escape if he does not appear by the end of the two weeks, and thus can be prosecuted immediately but his violation continues as long as he remains at large”], revd on other grounds sub nom. Carr v United States, 560 US 438 [2010]; United States v Hinckley, 550 F3d 926, 936 [10th Cir 2008] [“An interpretation of the sex offender registration requirement that defines it in any way other than as a continuing offense would result in absurdity”], abrogated on other grounds by Reynolds v United States, 565 US —, 132 S Ct 975 [2012].)
A focus on congressional intent likewise led two federal courts to hold that a failure to register under the Alien Registration Act of 1940 was a continuing offense for statute of limitations purposes. That statute, former 8 USC § 452, required “every alien” who was 14 years of age or older who remained in the United States for 30 days or longer to register and be fingerprinted. (United States v Franklin, 188 F2d 182, 186 [7th Cir 1951].) Franklin held that “Congress intended by this Act to require all aliens, friendly as well as enemy [aliens], to register in order to check on their activities, to keep them under surveillance for the security of the country,” and that, consistent with *1011 this purpose, a failure to register was a “a continuing wilful violation of the law” for statute of limitations purposes. (Id. at 187.) Gancy v United States (149 F2d 788, 791 [8th Cir 1945]) also found that failure to register as an alien was a continuing offense, the statute being a “war measure passed as a safeguard in a time of national stress” that was to be “so construed as to accomplish the purpose of Congress in enacting it.” Thus, even though the statute criminalized only a single failure to act, the importance of the legislative purpose — the need to maintain national security during wartime — led to the conclusion that the statute made out a continuing offense.
On the other hand, absent something compelling in the legislative history, it appears that, as in New York, the failure to comply with a statute that requires only a single act is generally a non-continuing offense. Toussie v United States (397 US 112, 117 [1970]) held that section 3 of the Universal Military Training and Service Act (50 USC Appendix § 453, as amended by 65 US Stat 76), which required male citizens between 18 and 26 years of age to register for the draft, was not a continuing offense. The Court rejected the argument that the statute created a continuing offense that ended only on the defendant’s 26th birthday, and that, as a result, the applicable five-year statute of limitations would only commence after that date. (Id.) The Court noted that there is “nothing inherent in the act of registration itself which makes failure to do so a continuing crime. Failing to register is not like a conspiracy which the Court has held continues as long as the conspirators engage in overt acts in furtherance of their plot.” (Id. at 122.)[8]
D. The Gun Offender Registration Act
Guided by the above cases, the court turns to GORA.
1. The Statutory Scheme
GORA is codified at Administrative Code § 10-601 et seq. Under its terms, a person convicted in a court in New York City of violating Penal Law § 265.02 (4), (5), (6), (7) or (8) or Penal Law § 265.03 (3) after GORA’s effective date[9] is a “gun offender.” (Administrative Code § 10-602 [d], [e].) A gun offender is required to register with the NYPD at the time the sentence on a qualifying offense is imposed, using a form prescribed by the *1012 NYPD. (Administrative Code § 10-603 [a].) The registration form requires the gun offender to provide his name, address, sex, date of birth, and other identifying information. (Administrative Code § 10-603 [b], [c] [1].) In addition, the registration form requires information about the offense of conviction, any educational institution that the gun offender contemplates attending and his expected place of employment. (Administrative Code § 10-603 [c] [3]-[5].)
The gun offender must appear at the NYPD’s gun offender monitoring unit within 48 hours of his release if sentenced to imprisonment or, if not, within 48 hours of the imposition of sentence, to verify his registration. (Administrative Code § 10-603 [d].) Thereafter, any gun offender who is a resident of New York City must return to the GOMU to verify his registration within 20 days of each six-month anniversary of his initial registration date. (Administrative Code § 10-603 [e] [1].) If a gun offender is incarcerated or hospitalized during the period within which he is required to verify he must personally appear at the GOMU within 48 hours of his release. (Administrative Code § 10-603 [e] [2].) The gun offender must register and verify for four years from the date of conviction, if he was not sentenced to imprisonment, or four years from his release if he was sentenced to imprisonment. (Administrative Code § 10-604.)
2. Legislative History
GORA’s legislative history indicates that the registration scheme was intended to reduce recidivism by gun offenders, and that it was closely modeled on the concept of sex offender registration.
GORA began as Council of City of NY Intro No. 362, introduced in the New York City Council in June of 2006. A first-in-the-nation proposal, the legislation’s sponsors indicated that it was intended to address the “unique dangers” posed by individuals who have been convicted of a felony gun offense. The sponsors noted that “these offenders should be monitored to prevent them from reoffending, and to ensure their prompt apprehension if they commit further crimes.” (Council of City of NY Intro No. 362, Report of Committee on Public Safety, June 27, 2006 at 2.) The report noted that in New York City approximately 750 individuals are convicted of criminal possession of a firearm in the third degree each year, and that “those convicted of these types of crimes are more likely to be rearrested than other felons, and are four times as likely to be ar *1013 rested for homicide.” (Id. [footnote omitted].) Finally, the report noted, apparently referring to sex offender registration, that the NYPD has demonstrated that “information about past offenders can be used to prevent future crimes.” (Id. at 4.)
Testimony at a June 27, 2006 hearing before the New York City Council’s Committee on Public Safety reiterated these same themes. John Feinblatt, New York City’s Criminal Justice Coordinator, testified that “[g]un offenders recidivate more frequently and more violently than other felons,” and that they are “about four times more likely to be arrested for homicide” than other felons. (Council of City of NY Intro No. 362, tr of hearing before Committee on Public Safety, June 27, 2006 at 11-12.) Given this, he went on, “we have an obligation to keep track of gun offenders. We want to know who they are, where they live, and most important, we want them to know that we are keeping tabs on them.” (Id. at 12.) Mr. Feinblatt observed that “we have every reason to believe” that GORA “will save lives,” noting that one study revealed that recidivism rates for sex offenders fell by about half after the implementation of registration laws. (Id.) In addition, an organization known as New Yorkers Against Gun Violence submitted written testimony in support of the legislation because “gun offenders are highly likely to commit other violent crimes.” (Id. at 79.)
Support for gun offender registration was not unanimous, however. Written testimony from the New York State Rifle and Pistol Association, Inc. (the Association) opposed the legislation, noting that while there might be “some merit” in paying “continued attention” to “genuine criminals” after their release from incarceration, GORA is “focused on status-offenders rather than persons with demonstrated histories of armed violence and/or otherwise convincing histories of incorrigible anti-social criminal behavior.” (Id. at 69.) The Association also expressed concern that individuals subject to GORA will be “discriminated against in employment and education, a result plainly counterproductive to society’s strong interest in the legitimate economic success of every free citizen, in addition to being grossly unfair.” (Id. at 72.)
The legislation was reintroduced on July 19, 2006, as Council of City of NY Intro No. 362-A with amendments that conformed to anticipated changes in the Penal Law that would affect GORA’s implementation. The committee report for Intro No. 362-A identified the same legislative concerns as those identified in the committee report for Intro No. 362: the “unique *1014 dangers” posed by gun offenders and their higher and more violent recidivism rate. (Council of City of NY Intro No. 362-A, Report of Committee on Public Safety, July 19, 2006 at 2.)
At a final hearing before the full City Council on July 19, 2006, Speaker Quinn remarked that GORA would “help protect New Yorkers” because “the statistics show that criminals who use guns when they commit crimes left to their own devices will do that again and again and again.” (Council of City of NY Intro No. 362-A, tr of hearing before City Council, July 19, 2006 at 46-47.) GORA would make sure that we “better monitor those individuals” and would “give[ ] us another reason to apprehend [them] and send them back to jail to get them off the streets where they can harm children and harm other New Yorkers.” (Id. at 46.) Council Member Vallone, Chair of the Public Safety Committee, noted that, with GORA, “[w]e will be keeping an eye on our most violent felons, the ones who are four times more likely to kill somebody, and they know we have our eye on them, they know they’re being watched, and if they screw up they go back to jail.” (Id. at 47-48.)
The City Council approved GORA on July 19, 2006, and Mayor Bloomberg signed it into law on July 27, 2006.
E. Failure to Re-Register under the Gun Offender Registration Act is a Continuing Offense for Statute of Limitations Purposes
The parties offer two radically differing approaches to GORA violations. To the defense, the offense of failure to register or verify both commences and is completed on the first occasion on which the defendant was required to act but failed to do so. Under this view, the prosecution for the GORA violation must commence within two years of that date. To the People, a GORA violation commences on the first date on which the defendant fails to comply. But, at least in cases where the defendant does not voluntarily return to GOMU to verify on his own or is not apprehended in the interim, the offense is not completed for statute of limitations purposes until the four-year anniversary of the date of the initial registration requirement. Thus, to the People, in such cases, a prosecution for a GORA violation is timely as long as the action is commenced within two years of that four-year anniversary.
For the reasons that follow, the court agrees with the People’s view of the statute. A GORA violation commences on the date of the defendant’s first failure to comply with the registration scheme and lasts until: (1) the defendant registers or verifies; (2) his apprehension; or, (3) at the latest, the four-year anniver *1015 sary of the initial registration requirement. The presumption against continuing offenses is overcome by the nature of the proscribed conduct and GORA’s legislative history.
It is apparent from the statute itself that the duty to register and verify under GORA is indeed a continuing duty. After his initial registration the gun offender must verify in person within 48 hours and must then return to the GOMU every six months during a four-year period to verify his information. The continuing and periodic nature of the verification obligation strongly suggests that the City Council also intended that the offense of failing to verify is a continuing offense. In this regard, even though a GORA violation involves a failure to act, the offense is analytically similar, for purposes of the statute of limitations, to those offenses defined by a continuing course of affirmative conduct. Those offenses are always continuing offenses for purposes of the statute of limitations.
It is the continuing nature of GORA’s verification requirement that distinguishes this offense from those New York cases that have held that a criminal failure to act is not a continuing offense. Both of those cases examined offenses involving a single failure to act, and not a statutory scheme, such as GORA, requiring repeated actions over a defined period of time.
The closest New York case is Loremady Realty Corp. (188 Misc at 944), where a landlord was charged with failing to file a rent registration form “[o]n and after” the date it was due. Despite this charging language, however, the court found that the offense was not a continuing offense for statute of limitations purposes because the statute contained a single requirement— that the form be filed “on or before December 15, 1943.” (Id. at 945.) The criminal offense was merely the failure to file by that date. “A careful examination of the pertinent regulation fails to disclose any regulation which requires the filing of a registration statement after December 15, 1943.” (Id.) Since that was the date the form was due, “the Statute of Limitations started to run from that date.” (Id. at 946.)
Bail jumping is another potentially analogous offense. It criminalizes a somewhat similar failure to act — the failure to return to court on the date directed or “voluntarily within thirty days thereafter.” (Penal Law § 215.57.) Nevertheless, both the First and Second Departments have held that bail jumping is not a continuing offense. The statute of limitations begins to run on the day after the 30th day. (Landy, 125 AD2d at 704; Martinez, 60 AD2d at 551.)
*1016 The offense of failure to re-register under GORA is categorically different from these, however. The statute contains a number of requirements that span a period of time: the gun offender must first register at the time of sentencing or release from prison, appear in person at GOMU 48 hours later, and must then verify in person every six months for four years. (Administrative Code § 10-604.) Because GORA does not criminalize a single failure to act, cases holding that a single criminal failure to act is not a continuing offense do not govern here.
This same reasoning distinguishes Toussie (397 US at 117), which held that a failure to register for the draft on one’s eighteenth birthday is not a continuing offense. That registration requirement was singular — the statute did not require periodic updates, the way GORA does, and there was nothing in the legislative history to override the presumption against continuing offenses.
The court agrees with the People that, overall, the closest analogy to GORA is to failure to register as a sex offender, both with respect to the nature of the offense and its legislative history. While no New York court has had the occasion to decide whether a violation of New York’s Sex Offender Registration Act (Correction Law § 168 et seq.) is a continuing offense for purposes of the statute of limitations, courts in at least six states, along with three federal circuits, have held that failure to register as a sex offender is a continuing offense. The court is persuaded that much of the reasoning of those decisions applies with equal force here.
Those decisions focus on the nature of the conduct and the legislative history. Obviously, with respect to the criminal conduct, there is a very close analogy between failure to verify under GORA and failure to re-register as a sex offender. Both schemes require some sort of initial registration along with periodic updates for a defined period of time. It is difficult to see a meaningful difference between the two regulatory schemes that would rationally point to the conclusion that failure to verify under GORA is not a continuing offense, while a failure to register as a sex offender is.
And the analogy to sex offender registration is strengthened by GORA’s legislative history. While it is true that this history does not expressly include language deeming GORA a continuing offense for statute of limitations purposes, it does expressly liken GORA to sex offender registration schemes, after which GORA was modeled, which have universally been so deemed.
*1017 Most importantly, GORA’s legislative history identifies a goal that is identical to that of sex offender registration schemes— protecting the public from a class of offenders who pose a particular danger to the community because of their manner and rate of recidivism. In fact, GORA’s legislative history reveals that the City Council intended that gun offender registration would reduce recidivism in many of the same ways that sex offender registration does. Gun offender registration allows the police to keep track of offenders by maintaining up-to-date information about where they live, work and go to school. Additionally, the offenders themselves know that they are subject to monitoring, which causes them refrain from committing further crimes while they are, as it were, under the microscope.
Finally, it is readily apparent that, as with sex offender registration, these goals are best served if the failure to comply with GORA is treated as a continuing offense. The police need current and accurate information about gun offenders in order to effectively monitor them. And the goal of reducing recidivism is best served if offenders know that they cannot escape liability when they drop out of the registration scheme by lying low for a relatively short period and hoping that they are not apprehended. Extending GORA’s temporal reach as long as possible, by deeming it a continuing offense, clearly best serves its legislative purpose.
G. Conclusion
Accordingly, for these reasons, the court concludes that failure to re-register under GORA is a continuing offense. The offense is completed and the two-year statute of limitations begins to run only once the four-year reporting period has expired, unless the defendant voluntary re-registers or is apprehended within that period. Since, in this case, the People do not allege that defendant re-registered or was apprehended within the four-year registration period, and they commenced the action within two years of that four-year date, the prosecution is not time-barred. Defendant’s motion to dismiss is accordingly denied.
III. Conclusion
Defendant’s motion to dismiss the information is denied.

. In reaching this decision, the court has considered, in addition to the relevant statutes and case law, defendant’s motion papers and the People’s response.

. The legislature recodified this section as Penal Law § 265.03 (3), effective November 1, 2006.

. GORA uses the term “verify,” not “re-register.” In this opinion, the two terms are used interchangeably.

. The significance of this date is not immediately apparent from the information in the court file.

. No tolling or extension provision applies here.

. On the other hand, offering a false instrument for filing is not a continuing offense. People v Taub (2003 NY Slip Op 50652[U], *2 [Sup Ct, NY County 2003]) held that, where defendant filed a false licencing application with the Department of Social Services, the statute of limitations began to run on the date of filing, even though the application was renewed every two years thereafter. “[A] reading of the statute compels the conclusion that the crime punishes the discrete act of offering or presenting a document, rather than a continuous course of conduct. That the license is renewable every two years is irrelevant; it was filed only once.” (Id.)

. Under Florida law, the clock starts on the day after the offense is committed. (Fla Stat § 775.15 [3].)

. Congress subsequently overruled Toussie by enacting a statute expressly rendering failure to register for the draft a continuing offense that ends on the defendant’s 26th birthday.

. The effective date is March 24, 2007.